CAWKER and others, Executors, Respondents, vs. MEYER and others, Railroad Commissioners, Appellants.

*October 28—November 14, 1911.*

*Public utilities: What are: Landlord furnishing heat, etc., to tenants and neighbors: Railroad Commission.*

1. Where a landlord operates a plant in his building to furnish light, heat, and power to the tenants therein and incidentally, in order to enable him to operate the plant economically, to a few neighbors, this is not a furnishing of heat, light, or power "to or for the public" and does not constitute him a "public utility" within the meaning of sec. 1797m—1, Stats. (Laws of 1907, ch. 499).

2. If the product of such a plant is intended for and open to the use of all the members of the public who may require it, to the extent of its capacity, the owner thereof is a "public utility," irrespective of the number of consumers actually supplied.

3. But the word "public," in said statute, must be construed to mean more than a limited class defined by the relation of landlord and tenant, or by nearness of location, as neighbors, or more than a few who by reason of any peculiar relation to the owner of the plant can be served by him.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge. *Affirmed.*

Action to restrain the Railroad Commission of Wisconsin from enforcing the provisions of ch. 499, Laws of 1907 (secs. 1797m—1 to 1797m—108, Stats.), as against the plaintiffs. The complaint alleged:

"First. That these plaintiffs are, and at all the times hereinafter mentioned were, duly qualified and acting as executors of and trustees under the last will and testament of E. Harrison Cawker, deceased, and under and by virtue of letters testamentary duly issued to them out of the county court in and for the county of Milwaukee, in the state of Wisconsin, and that these plaintiffs are, and at all times hereinafter mentioned were, as such executors and trustees, the owners in fee simple and in possession of certain real estate known and described as lot numbered eleven (11) and the south half of

lot numbered twelve (12) in block numbered fifty-seven (57) in the Fourth ward of the city of Milwaukee, county of Milwaukee, and state of Wisconsin.

"Second. That said defendants are, and for some time last past were, the duly appointed and qualified members of the Railroad Commission of Wisconsin.

"Third. These plaintiffs further show that in or about the year 1896 these plaintiffs caused to be erected and constructed upon said premises, a certain building known as the Cawker Building, designed and intended by these plaintiffs to be rented for stores, offices, and light manufacturing purposes. That at the time of the erection of said building, as aforesaid, these plaintiffs caused to be installed therein a steam plant for the generation of heat, electric light, and power for the purpose of heating and lighting said building and furnishing electric light and power to such of the tenants and occupants of said building as should desire the same.

"Fourth. That in order to operate said steam plant with economy, it is necessary to operate the same so as to generate heat, light, and power to the full capacity of said plant, and that after the completion of said building and the installation therein of said steam plant, these plaintiffs found that they were unable to make use of the full capacity of said power plant in the heating and lighting of said building and in furnishing to the tenants thereof as much light and power as said tenants desired to purchase, and that in order to operate said plant with economy it would be necessary for them to dispose of their surplus heat, light, and power to other persons.

"Fifth. These plaintiffs further show, that for the purpose of enabling them to operate their said plant with economy they entered into contracts with three persons occupying premises adjacent to said Cawker Building, to furnish them with light and power from their said plant, to wit: Otto Pietsch Dye Works, F. H. Feldman, and G. Logemann & Son Co., and that they also entered into a contract with said G. Logemann & Son Co. to furnish to said G. Logemann & Son Co. steam heat for the purpose of heating the premises immediately adjoining said Cawker Building on the north, and that the furnishing of such heat, light, and power to said three persons or corporations is merely incidental to the furnishing of heat, light, and power for their own use in said Cawker Build-

ing and for the use of the tenants occupying said Cawker Building, and for the purpose of enabling these plaintiffs to operate their said power plant economically.

"Sixth. These plaintiffs further show that they have not at any time applied for or received any permit from the city of Milwaukee to make use of any street or alley in said city, nor have they ever held themselves out as able to or willing to furnish light, heat, and power to the public, or to any person or persons other than the persons above named, or their predecessors in the occupancy of the premises now occupied by said three persons. That there are two public utilities in said city of Milwaukee engaged in the production, transmission, delivery, and furnishing of heat and light, operating under indeterminate permits.

"Seventh. These plaintiffs further show that said defendants have demanded of these plaintiffs that they comply with the provisions of chapter 499, Laws of 1907, and the various acts amendatory thereof, entitled 'An act to create section 1797m—1 to 1797m—108, inclusive, Statutes of 1898, giving the Wisconsin Railroad Commission jurisdiction over public utilities, providing for the regulation of such public utilities, appropriating a sum sufficient to carry out the provisions of this act, and repealing certain acts in conflict with the provisions hereof,' and have threatened to cause the attorney general of the state of Wisconsin to prosecute these plaintiffs under the provisions of said act, in case of their failure or neglect to comply therewith, and these plaintiffs further show that they are advised and believe that said chapter 499 of the Laws of 1907, and of the several acts amendatory thereof, are not applicable to these plaintiffs, or to any person or persons operating a light, heat, and power plant under conditions similar to those under which these plaintiffs are operating their said heat, light, and power plant in said Cawker Building; that the provisions of said act, if applied to these plaintiffs, would render the operation of their said plant so expensive and burdensome as to compel these plaintiffs to cease the operation thereof, or to operate the same at a considerable loss to these plaintiffs. That if said act should be construed to be applicable to these plaintiffs, these plaintiffs are liable under the provisions thereof to forfeit a sum not less than $100, nor more than $1,000 per day, for each and

every day during which they have since the passage and publication of said act, or shall in the future, fail to comply with the provisions of said act; that the penalties so imposed are unreasonable and void and are so large that the enforcement of said penalties against these plaintiffs might amount to a confiscation of the entire trust estate in their hands, to the irreparable injury of these plaintiffs and of the beneficiaries under the trust, by virtue of which these plaintiffs hold the premises hereinafter described, and that these plaintiffs have no adequate remedy at law.

"Wherefore, these plaintiffs pray the judgment of this court that said defendants and each of them, their successors in office and their agents, servants, and employees be forever restrained and enjoined from enforcing or seeking to enforce the provisions of said chapter 499, Laws of 1907, as against these plaintiffs, or from making any order or orders under and by virtue of the authority vested in them by said act, requiring these plaintiffs to do or perform any act required by the provisions of said public utility law, or from in any manner interfering with the operation by these plaintiffs of their said heat, light, and power plant, and for such other and further relief as may be just and equitable, and for their costs in this action."

The defendants demurred on the ground that the complaint did not state facts sufficient to constitute a cause of action, and from an order overruling the demurrer they appealed.

For the appellants there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, and oral argument by *Mr. Jackson.*

For the respondents there was a brief by *Ryan, Ogden & Bottum,* attorneys, and *Lewis M. Ogden,* of counsel, and oral argument by *Lewis M. Ogden.*

VINJE, J. From the allegations of the complaint set out in the foregoing statement of facts it appears that plaintiffs built a plant for the purpose of furnishing the tenants of their own building with heat, light, and power; that the completed plant proved to be large enough, when economically run, to

furnish more heat, light, and power than the tenants of their own building required, and that they sold the surplus to three of their adjoining neighbors. Does the operation of such a plant, under such circumstances, constitute a public utility within the meaning of the statute, secs. 1797$m$—1 to 1797$m$—108, Stats. (Laws of 1907, ch. 499) ?    Sec. 1797$m$—1 defines a public utility as follows:

"The term 'public utility' as used in this act shall mean and embrace every corporation, company, individual, association of individuals, their lessees, trustees or receivers appointed by any court whatsoever, and every town, village or city that now or hereafter may own, operate, manage or control any plant or equipment or any part of a plant or equipment within the state, for the conveyance of telephone messages or for the production, transmission, delivery or furnishing of heat, light, water or power either directly or indirectly to or for the public."

The state claims that by furnishing heat, light, and power to the tenants of their own building the plaintiffs became a public utility; that the furnishing of such commodities to any one else than to one's self is furnishing it to the public within the meaning of the statute.    It is obvious that such a construction is too narrow, for it would constitute the owner of every building furnishing heat or light to tenants, as well as every householder who rents a heated or lighted room, a public utility.    The legislature never contemplated such a construction to be given the words "public utility."    They must receive a construction that will effectuate the evident intent of the legislature and not one that will lead to a manifest absurdity.    It was not the furnishing of heat, light, or power to tenants or, incidentally, to a few neighbors that the legislature sought to regulate, but the furnishing of those commodities to the public, that is, to whoever might require the same.    *Wis. River Imp. Co. v. Pier,* 137 Wis. 325, 118 N. W. 857.    The use to which the plant, equipment, or some portion thereof is put must be for the public in order to consti-

tute it a public utility. But whether or not the use is for the public does not necessarily depend upon the number of con- sumers; for there may be only one, and yet the use be for the public—as where a plant is built and operated for furnishing power to the public generally, but for a time finds one consumer who uses it all. If the product of the plant is intended for and open to the use of all the members of the public who may require it, to the extent of its capacity, the fact that only one or two thereof consume the entire product renders the plant none the less a public utility. On the other hand, a landlord may furnish it to a hundred tenants or, incidentally, to a few neighbors, without coming either under the letter or the intent of the law. In the instant case the purpose of the plant was to serve the tenants of the owners, a restricted class, standing in a certain contract relation with them, and not the public. The furnishing of power, light, and heat to a few neighbors was incidental merely and limited to them. Should plaintiffs, however, enlarge their field of service, it is by no means certain that they would remain exempt from the operation of the law. And having come within its provisions, they would be required, to the extent of the capacity of their plant, to serve any one making a demand upon them, under such regulations as the Railroad Commission might lawfully prescribe. *Wis. River Imp. Co. v. Pier,* 137 Wis. 325, 118 N. W. 857.

It is very difficult, if not impossible, to frame a definition for the word "public" that is simpler or clearer than the word itself. The Century Dictionary defines it as "of or belonging to the people at large, relating to or affecting the whole people of a state, nation or community, not limited or restricted to any particular class of the community." The New International defines it as "of or pertaining to the people; relating to or affecting a nation, state or community at large." The tenants of a landlord are not the public, neither are a few of his neighbors or a few isolated individuals with whom he may

choose to deal, though they are a part of the public. The word "public" must be construed to mean more than a limited class defined by the relation of landlord and tenant, or by nearness of location, as neighbors, or more than a few who by reason of any peculiar relation to the owner of the plant can be served by him.

While we find it quite easy to ascertain the true spirit and intent of the law, yet we deem it inexpedient and unsafe to attempt to define in more specific terms than the statute what does and what does not constitute a public utility. Each case will depend upon its own peculiar facts and circumstances and must be tested by the statute in the light of such facts and circumstances. The law should receive a construction that will effectuate its true purpose, however difficult that may be. No resort should be had to any arbitrary standard or to any fixed line of demarcation on the ground that they are easy of application, or for any other reason. The statute was intended to include those, and only those, who furnished the commodities therein named to or for the public. It was not intended to affect the relation of landlord and tenant, or to abridge the right to contract with a few neighbors for a strictly incidental purpose, though relating to a service covered by it.

The conclusions we have arrived at render it unnecessary to determine whether or not the statute unreasonably abridges the right to contract, and whether or not that portion of it prescribing penalties is unconstitutional on the ground that they are excessive.

*By the Court.*—Order affirmed.