PAGE, COMMISSIONER, v. ANDREWS.

Opinion delivered April 29, 1918.

GINS AND GINNERS—"PUBLIC GIN"—GIN OPERATED FOR LANDLORD AND TENANT.—A gin operated by a landowner for the benefit of himself and his tenants and share croppers does not come within the general definition of a "public gin" as used in the Acts of 1917, p. 1401.

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

*John D. Arbuckle,* Attorney General, and *T. W. Campbell,* Assistant, for appellant.

The appellees were "public ginners" within the meaning of Act No. 266, Acts of 1917. 34 Ark. 179; 8 Words & Phrases, 6905, 2667.

*Bridges, Wooldridge & Wooldridge,* for appellees.

Appellees are not "public ginners" within the meaning of the Act. 37 L. R. A. (N. S.) 510; 147 Wis. 320; 32 Cyc. 1255; 92 S. W. 419; 72 *Id.* 944-6-7, etc.

McCULLOCH, C. J.  Appellees, who were plaintiffs below, and were engaged in operating cotton gins in connection with their plantations, instituted this action to restrain appellant, as Commissioner of Mines, Manufacture and Agriculture and as Ex-Officio Warehouse Commissioner, from enforcing against them the provision of the act of the General Assembly of 1917, regulating public gins. Acts 1917, p. 1401.  Section 42 of the statute in question declares that "all public gins that may be operated in this State, whether by individuals, partner-

ships, joint stock companies or corporations, shall be charged with a public use," and certain regulations are prescribed for the operation of such gins, among other things to obtain a license as public ginner and to give bond to the State of Arkansas for the use and benefit of all in whose favor a cause of action may arise. The statute contains no express definition of the term "public gins" as used therein.

Appellees alleged in their complaint "that they are not public ginners, but that each operated and expects to operate his gin for the season of 1917 and 1918 as a private gin, ginning only cotton produced and owned by himself, his tenants and share croppers, or those who raise the crop for a portion of same, on the lands of the ginner." The precise limitation upon the meaning of the word "public" in a statute of this kind is difficult to define, and it is not necessary for us to do so in this case, but it seems clear that the operations conducted by appellees, as described in their complaint, do not come within the provisions of the statute. They allege that they are not public ginners, but operate their gins solely for the purpose of ginning cotton produced and owned by themselves, their tenants and share croppers on their own lands.

For the purpose of testing the sufficiency of the complaint on demurrer, the allegations must be taken as true. According to those allegations the cotton gins are operated by appellees merely in connection with their plantations and as a part of the same business. They operated the gins, in other words, for their own benefit and the benefit of a limited class of persons connected with them in the operation of the farms, and certainly this does not make them public ginners.

Counsel for appellant make the point that a tenant on a farm holds the title to the product of the land rented, subject only to the lien of the landlord, and that there is no distinction between a tenant and any other member of the public. The proposition of law thus announced is

sound so far as it concerns the distinction between the relations of a tenant and that of a share cropper or laborer to the landlord. But the fact that the tenant is the owner of the crop does not put him in a class with the general public, so far as concerns the use of a gin provided especially for the ginning of the crops on the plantation of the owner. The tenants and share croppers on a plantation are interested with the landlord in providing facilities for gathering the crop and preparing it for market, and they are in a class to themselves, so that a gin operated for the benefit of the land owner himself and his tenants and share croppers does not come within the general definition of a "public gin" as used in the statute. The protection of this class of patrons of a gin may be as appropriate as that extended by the provisions of this statute to the general public, but the law makers have not seen fit to regulate all gins, and only those gins that are operated for the benefit of the public come within the terms of this statute. The province of the courts is to construe the law and not to make the law.

The case of *Cawker* v. *Meyer*, 147 Wis. 320, 37 L. R. A. (N. S.) 510, seems to be a leading one on this subject. There was involved in that case the construction of a statute regulating certain public utilities, and the court said: "The word 'public' must be construed to mean more than a limited class defined by the relation of landlord and tenant, or by nearness of location, as neighbors, or more than a few who, by reason of any peculiar relation to the owner of the plant, can be served by him."

We need not in the present case give any broader definition of the term than to say that the facts of this case, as set forth in the complaint, do not bring the business of appellees within the terms of the statute. Therefore, we limit the decision to the particular facts set forth and hold that the operation of a cotton gin by a farmer in connection with his own farm for the purpose of ginning his own cotton and that of his ten-

ants, share croppers and others who produce crops on the farm, is not a public ginner within the meaning of the statute, and that a gin so operated is not subjected by the statute to regulation.

Decree affirmed.