City of Sun Prairie, Appellant, v. Public Service Commission and others, Respondents.

*November 2—November 28, 1967.*

For the appellant there was a brief by *Petersen, Sutherland, Axley & Brynelson* of Madison, and *Wilmer E. Trodahl* of Sun Prairie, city attorney, and oral argument by *Eugene O. Gehl* of Madison.

For the respondent Public Service Commission the cause was argued by *Clarence B. Sorensen,* attorney, with whom on the brief were *Bronson C. La Follette,* attorney general, and *William E. Torkelson,* chief counsel of the Public Service Commission.

For the respondents Lewis P. Brooks and Brooks Equipment Leasing, Inc., there was a brief by *Stafford, Rosenbaum, Rieser & Hansen* of Madison, and oral argument by *Willard S. Stafford.*

For the respondent Wisconsin Gas Company there was a brief by *Foley, Sammond & Lardner, Vernon A. Swanson,* and *N. J. Lesselyoung,* all of Milwaukee, and oral argument by *Mr. Swanson.*

CURRIE, C. J. The issue on this appeal is whether the landlord of a large complex which furnishes heat, light, water and power to its tenants is a public utility within the definition of sec. 196.01 (1), Stats., so as to be under the jurisdiction of the Public Service Commission. This statute defines a public utility as follows:

" 'Public utility' means and embraces every corporation, company, individual . . . town, village or city that may own, operate, manage or control . . . any part of a plant or equipment, within the state . . . for the production, transmission, delivery or furnishing of heat, light, water or power either directly or indirectly to or for the public."

We deem *Cawker v. Meyer* [1] to be determinative of the result. In that case the landlord constructed a build-

---

[1] (1911), 147 Wis. 320, 133 N. W. 157.

ing in the city of Milwaukee to be rented for stores, offices, and light manufacturing purposes. A steam plant was installed therein to generate heat, electric light and power to be furnished to the tenants and occupants of the building who desired such utility service. Since the landlord was unable to dispose of all the heat and electricity to his tenants, he entered into contracts with three adjoining property owners to furnish them heat and power.

The Wisconsin railroad commission, which had jurisdiction over public utilities at that time, contended that the landlord was a "public utility" as defined in sec. 1797m–1, Stats. (now sec. 196.01 (1)). The commission argued that the furnishing of heat, light, and power "to any one else than to one's self is furnishing it to the public within the meaning of the statute." [2] This court stated:

". . . It was not the furnishing of heat, light, or power to tenants or, incidentally, to a few neighbors that the legislature sought to regulate, but the furnishing of those commodities to the public, that is, to whoever might require the same. *Wis. River Imp. Co. v. Pier*, 137 Wis. 325, 118 N. W. 857. The use to which the plant, equipment, or some portion thereof is put must be for the public in order to constitute it a public utility. But whether or not the use is for the public does not necessarily depend upon the number of consumers; for there may be only one . . . On the other hand, a landlord may furnish it to a hundred tenants or, incidentally, to a few neighbors, without coming either under the letter or the intent of the law. In the instant case the purpose of the plant was to serve the tenants of the owners, a restricted class, standing in a certain contract relation with them, and not the public. . . .

". . . The tenants of a landlord are not the public, neither are a few of his neighbors or a few isolated individuals with whom he may choose to deal, though they are a part of the public. The word 'public' must be construed to mean more than a limited class defined

[2] *Id.* at page 324.

by the relation of landlord and tenant, or by nearness of location, as neighbors, or more than a few who by reason of any peculiar relation to the owner of the plant can be served by him.

". . . [The statute] was not intended to affect the relation of landlord and tenant, or to abridge the right to contract with a few neighbors for a strictly incidental purpose, though relating to a service covered by it." [3]

Ch. 499, Laws of 1907, which provided for the regulation of public utilities and contained the definition of "public utility" found in sec. 1797m–1, Stats. (now sec. 196.01 (1)), had become generally known as the Public Utilities Law.[4] The commission to which this regulation had been entrusted was the then recently created Wisconsin railroad commission. John Barnes was the first chairman of this regulatory commission. It is noteworthy that when the *Cawker Case* reached the court in 1911, Barnes was then a member of this tribunal and concurred in the decision.

The statutory definition of "public utility" in sec. 1797m–1, Stats., has not been amended in any relevant portion since this court's decision in *Cawker,* and the same definition may be found today in sec. 196.01 (1). This court has long been committed to the principle that a construction given to a statute by the court becomes a part thereof, unless the legislature subsequently amends the statute to effect a change.[5]

---

[3] *Id.* at pages 324–326.

[4] See Crow, *Legislative Control of Public Utilities in Wisconsin,* 18 Marq. L. Rev. (1933), 80.

[5] *Moran v. Quality Aluminum Casting Co.* (1967), 34 Wis. 2d 542, 556, 150 N. W. 2d 137; *Mednis v. Industrial Comm.* (1965), 27 Wis. 2d 439, 444, 134 N. W. 2d 416; *Hahn v. Walworth County* (1961), 14 Wis. 2d 147, 154, 109 N. W. 2d 653, 94 A. L. R. 2d 618; *Meyer v. Industrial Comm.* (1961), 13 Wis. 2d 377, 382, 108 N. W. 2d 556; *Thomas v. Industrial Comm.* (1943), 243 Wis. 231, 240, 10 N. W. 2d 206; *Milwaukee County v. City of Milwaukee* (1933), 210 Wis. 336, 341, 246 N. W. 447; *Eau Claire Nat. Bank v. Benson* (1900), 106 Wis. 624, 627, 628, 82 N. W. 604.

The courts of California,[6] Missouri,[7] Ohio,[8] and Pennsylvania [9] have similarly held that a landlord who furnishes utility service to his tenants is not a public utility within the definition thereof contained in the applicable state law. Appellant has been unable to cite a single authority to the contrary.

We consider the Pennsylvania court's recent decision in *Drexelbrook Associates v. Pennsylvania Public Utility Comm.*[10] to be highly significant in view of appellant's argument that the rule announced in *Cawker* should not be extended to a large apartment complex such as the instant one. Drexelbrook Associates is the owner of a real estate development known as Drexelbrook. It is a garden-type apartment village with 90 buildings containing 1,223 residential units, nine retail stores, and a club with a dining room, swimming pool, skating rink and tennis courts. The Pennsylvania Supreme Court held that the tenants of a landlord, although many in number, do not constitute "the public" within the meaning of Pennsylvania's Public Utility Law, but constitute rather a defined, privileged and limited group. The court held that the proposed service of electricity to them thus would be private in nature.

As in the instant appeal, it was argued in the *Drexelbrook Associates Case* that regulation was desirable to protect the interest of the tenants in so large an apartment complex. In disposing of this argument the Pennsylvania court stated:

"The controlling consideration is not whether regulation is desirable, but whether appellant [Drexelbrook

[6] *Story v. Richardson* (1921), 186 Cal. 162, 198 Pac. 1057, 18 A. L. R. 750.

[7] *State v. Public Service Comm. of Missouri* (Kan. City Ct. 1944), 178 S. W. 2d 788.

[8] *Jonas v. Swetland Co.* (1928), 119 Ohio St. 12, 162 N. E. 45.

[9] *Drexelbrook Associates v. Pennsylvania Public Utility Comm.* (1965), 418 Pa. 430, 212 Atl. 2d 237.

[10] *Supra,* footnote 9.

Associates] is subject to regulation under the Public Utility Law." [11]

*By the Court.*—Judgment affirmed.

WILKIE, J., took no part.