**Myron M. AMATO, Plaintiff,**

v.

**Robert RUTH et al., Defendants.**

No. 69–C–303.

United States District Court,
W. D. Wisconsin.

Jan. 16, 1970.

Jerome Elliott, Beloit, Wis., for plaintiff.

Robert Ruth, Dist. Atty., Janesville, Wis., William Eich, Asst. Atty. Gen., Madison, Wis., T. P. Bidwell, City Atty., Nicholas Jones, Asst. City Atty., Janesville, Wis., for defendants.

## OPINION AND ORDER

JAMES E. DOYLE, District Judge.

This is an action in which the plaintiff seeks (1) injunctive relief to prevent the defendants from proceeding with the prosecution of plaintiff for violation of Section 944.21(1) (a) of the Wisconsin Statutes and from proceeding with the prosecutions of plaintiff Amato, Robert Petitt, Maynard Miller and Frank Ryden for violations of Sections 9.07(2), 20.08, 20.09 of the Ordinances of the City of Janesville until such time as this court determines the constitutionality of said statute and ordinances; (2) injunctive relief to prevent the defendants from making any arrests under the "obscenity" statute or ordinances and from making any further seizures of matter they believe obscene, unless prior to such arrest or seizure the matter in question is determined to be obscene at an adversary hearing; (3) an order requiring defendants to return to plaintiff all books, magazines, movies and miscellaneous items seized; (4) a declaratory judgment that the above mentioned statute and ordinances are unconstitutional.

The court has before it the plaintiff's complaint; the affidavits of Wayne Udulutch and Leonard Nelson, police officers of the City of Janesville, Wisconsin; a copy of Section 9.07 of the Ordinances of the City of Janesville; and copies of the complaints charging plaintiff with violations of Section 944.21(1) (a) of the Wisconsin Statutes and Sections 9.07, 20.08 and 20.09 of the Ordinances of the City of Janesville. The facts as alleged in those documents are, as yet, uncontradicted and will be used for the purposes of deciding this motion:

On October 16, 1969, defendants Cochran and McDonnell, police officers of the City of Janesville, Wisconsin, entered plaintiff's book store and took from it, despite the objections of plaintiff, ten magazines, one paperback novel and two movies. The items were not paid for. No one was arrested. On October 17, 1969, a Janesville police officer, John Carter, and one Gary Brayshaw entered

plaintiff's book store where each purchased a magazine from Amato. On the basis of those purchases, Amato was arrested and charged with two violations of Section 944.21(1) (a) of the Wisconsin Statutes. On October 20, 1969, various Janesville policemen entered plaintiff's store and removed from it 409 magazines, 401 paperback novels, 8 decks of playing cards, 3 8mm movies and 2 vibrators. The officers advised Amato to appear the following day in County Court, Branch 2, Rock County, Wisconsin. Amato appeared and was charged with violating Sections 9.07(2), 20.08 and 20.09 of the Ordinances of the City of Janesville. On October 21, 1969, 1 vibrator, 1 novel and 191 magazines were returned to Amato. On December 5, 1969, Janesville police officers entered the plaintiff's store. Maynard Miller and Robert Petitt were working as employees at the time. The officers took an undetermined number of books, magazines and movies, some of which were returned several hours later. Miller and Petitt were advised to appear in court on charges of violating certain ordinances of the City of Janesville. On December 10, 1969, Janesville police officers entered plaintiff's store and removed an unknown quantity of books and magazines. Plaintiff's employee, Frank Ryden, was taken to jail on unknown charges. On none of the occasions when Janesville police officers seized items from Amato's store did they have search warrants. At no time was there an adversary hearing to determine the obscenity of the items taken prior to their seizure by City of Janesville policemen.

On December 15, 1969, this court issued an order which directed defendants to return to plaintiff certain seized matter and temporarily restrained them from making any further seizures without a prior adversary hearing.

Plaintiff's additional requests for temporary relief; the motions of defendants Cochran, McDonnell and Bidwell to dismiss this action in part and to amend the temporary order of December 15, 1969; and the motion to dismiss of defendant Ruth are all presently before the court

and will be more particularly outlined in the body of the opinion.

No jurisdictional allegation is made in the complaint, but jurisdiction of this action seems proper under 28 U.S.C. § 1343; 42 U.S.C. § 1983; and the Constitution of the United States and more particularly the First and Fourteenth Amendments thereto.

*Prosecution Under Section 944.21 (1) (a) of the Wisconsin Statutes*

Plaintiff requests that this court ultimately declare Section 944.21(1) (a) of the Wisconsin Statutes to be unconstitutional. He presently pursues entrance of a temporary order restraining his prosecution under the statute until such time as this court determines the statute's constitutionality. Defendant Ruth, District Attorney for Rock County, Wisconsin, moves to dismiss the action against him on the ground that the complaint fails to state a cause of action on which relief can be granted.

Amato's constitutional challenge is insubstantial. Defendant Ruth's motion to · dismiss must be granted.

■ Amato first contends that in not defining "obscene" or "indecent", § 944.-21(1) (a) is unconstitutionally vague. Plaintiff maintains that if the statute is intended to automatically comply with the definition of obscenity as set out by the United States Supreme Court, that fact should appear in the statute if it is to avoid unconstitutional vagueness.

Plaintiff's argument is not persuasive. The United States Supreme Court has upheld statutes with similar language when under the interpretation given the statute by state courts the proper standard for judging obscenity is applied. Mishkin v. New York, 383 U.S. 502, 86 S.Ct. 958, 16 L.Ed.2d 56 (1966); Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).

In Mishkin v. New York, *supra*, Mishkin was convicted of violating § 1141 of the New York Penal Law, McKinney's Consol.Laws, c. 40 for publishing, hiring others to prepare, and possessing with

intent to sell obscene books. Among other grounds, § 1141 was attacked as invalid on its face in that it exceeded First Amendment limitations by proscribing publications that were "obscene", allegedly an impermissibly vague term. In resolving the attack, the United States Supreme Court looked to the interpretation placed on "obscene" by the New York courts:

" * * * The contention that the term 'obscene' is also impermissibly vague fails under our holding in Roth v. United States, 354 U.S. 476, 491–492 [77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498]. · Indeed, the definition of 'obscene' adopted by the New York courts in interpreting § 1141 delimits a narrower class of conduct than that delimited under the Roth definition, People v. Richmond County News, Inc., 9 N.Y.2d 578, 586–587 [216 N.Y.S.2d 369], 175 N.E.2d 681, 685–686 (1961), and thus § 1141, like the statutes in Roth, provides reasonably ascertainable standards of guilt." 383 U.S. at 506–507, 86 S.Ct. at 962.

Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), concerned, *inter alia*, the validity of a federal obscenity statute which made punishable the mailing of material that was "obscene, lewd, lascivious, or filthy * * * or other publication of an indecent character" and the validity of a California statute which made punishable the keeping for sale of advertising material that was "obscene or indecent". In holding that both statutes withstood the attack that neither provided reasonably ascertainable standards of guilt and therefore violated the constitutional requirements of due process, the Court stated:

"Many decisions have recognized that these terms of obscenity statutes are not precise. This Court, however, has consistently held that lack of precision is not itself offensive to the requirements of due process. ' * * * [T]he Constitution does not require impossible standards'; all that is required is that the language 'conveys

sufficiently definite warning as to the proscribed conduct when measured by *common understanding and practices* * * *.' United States v. Petrillo, 332 U.S. 1, 7–8 [67 S.Ct. 1538, 1542, 91 L.Ed. 1877]. These words, applied according to the proper standard for judging obscenity, already discussed, give adequate warning of the conduct proscribed and mark ' * * * boundaries sufficiently distinct for judges and juries fairly to administer the law * * *. That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense * * *.' Id., at 7, 67 S.Ct., at page 1542. * * *

"In summary, then, we hold that these statutes, applied according to the proper standard for judging obscenity, do not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." 354 U.S. at 491–492, 77 S. Ct. at 1312.

A proper standard for judging obscenity has been made a part of § 944.21(1) (a) of the Wisconsin Statutes by action of the Wisconsin Supreme Court.

Section 944.21(1) (a) has been upheld by the Wisconsin Supreme Court over constitutional objections based upon the First and Fourteenth Amendments to the United States Constitution. State v. Chobot, 12 Wis.2d 110, 106 N.W.2d 286 (1960), appeal dismissed, 368 U.S. 15 (1961). In McCauley v. Tropic of Cancer, 20 Wis.2d 134, 121 N.W.2d 545 (1963), the same court upheld a companion statute, Section 269.565, which provides a civil remedy against the dissemination of obscene material. In neither statute was the word "obscene" in any way defined. In both *Chobot, supra,* and *Tropic of Cancer, supra,* the court recognized that the language of Wisconsin's obscenity statutes was to be construed as the equivalent of the definition of obscenity enunciated in Roth v.

United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957), and other decisions of the United States Supreme Court. *Roth, supra,* and the other Supreme Court decisions were recognized to be "completely binding * * * in determining whether the state violates the Fourteenth amendment in proscribing or suppressing a particular piece of material as obscene." *Tropic of Cancer, supra,* 20 Wis.2d at 139, 121 N.W.2d at 548.

The Wisconsin Supreme Court "has long been committed to the principle that a construction given to a statute by the court becomes a part thereof, unless the legislature subsequently amends the statute to effect a change." Sun Prairie v. Public Service Comm., 37 Wis.2d 96, 100, 154 N.W.2d 360 (1967).

With the binding interpretation enunciated in *Chobot* and *Tropic of Cancer,* § 944.21(1) (a) does "not offend constitutional safeguards against convictions based upon protected material, or fail to give men in acting adequate notice of what is prohibited." *Roth, supra,* 354 U.S., at 492, 77 S.Ct., at 1313.

Plaintiff contends, however, that the United States Supreme Court has recently changed its rationale in assessing the constitutionality of obscenity statutes. State v. Henry, 250 La. 682, 198 So.2d 889 (1967), was reversed *per curiam* by the United States Supreme Court in Henry v. Louisiana, 392 U.S. 655, 88 S.Ct. 2274, 20 L.Ed.2d 1343 (1968), giving as its sole reason a citation to Redrup v. New York, 386 U.S. 767, 87 S.Ct. 1414, 18 L.Ed.2d 515 (1967). Amato cites that *per curiam* reversal for the proposition that the Court has changed its position on the issue of what language in a state obscenity statute will withstand the constitutional attack of impermissible vagueness.

Although the Supreme Court of Louisiana had before it the issue of the constitutionality of a state obscenity statute, numerous other questions were passed on. It is quite unlikely that the United States Supreme Court would accomplish such a change of position by means of an abbreviated *per curiam* reversal of a case in which the vagueness of the state statute was the only one of a number of questions involved.

It should also be noted that *Redrup, supra,* does not speak to the constitutionality of the obscenity statutes there involved. Rather, the Court concludes "that the distribution of the publications in each of these cases is protected by the First and Fourteenth Amendments from governmental suppression, whether criminal or civil, *in personam* or *in rem.*" Id., at 770, 87 S.Ct., at 1416. After discussing the standards for determining "obscenity" applied by different members of the Court, the majority states that

"Whichever of these constitutional views is brought to bear upon the cases before us, it is clear that the judgments cannot stand." 386 U.S. at 771, 87 S. Ct. at 1416.

The dissenting opinion of Mr. Justice Harlan and Mr. Justice Clark makes the point more clear:

" * * * Today, the Court rules that the materials could not constitutionally be adjudged obscene by the States, thus rendering adjudication of the other issues unnecessary." 386 U. S. at 772, 87 S.Ct. at 1417.

A review of the state and lower federal court decisions in which the United States Supreme Court has cited *Redrup, supra,* as authority for *per curiam* reversal, reveals convictions under varying criminal obscenity statutes and suppressions under varying civil obscenity statutes in which the lower courts necessarily had to decide whether the material in question was obscene.

 Plaintiff also contends that § 944.21(1) (a) is unconstitutional as applied because it does not provide for an adversary hearing to determine the obscenity of the matter prior to any prosecution for its sale. A number of district court cases are cited in support: Delta Book Distributors, Inc. v. Cronvich, 304 F.Supp. 662 (E.D.La.1969); Sokolic v. Ryan, 304 F.Supp. 213 (S.D. Ga.1969); Geibig v. City of Hallendale,

No. 69–1005–Civ–CA (S.D.Fla.1969); Cambist Film, Inc. v. Tribell, 293 F. Supp. 407 (E.D.Ky.1968).

*Sokolic, supra; Geibig, supra;* and *Cambist, supra,* do not directly support the proposition for which they are cited. Although in its original order, the court in *Sokolic, supra,* held that any criminal prosecution prior to an adversary hearing and without plaintiff having the subsequent opportunity to refrain from selling materials determined to be obscene was violative of his First Amendment rights, the court modified its order the following day. In the supplemental order, the court stated:

> "All criminal charges under Ga. Code Title 26, § 2101 arising out of the events of July 16, 1969, may be prosecuted to completion at the discretion of the District Attorney." 304 F.Supp. at 219.

This court does not have the unreported decision of *Geibig, supra,* before it, but from the portion quoted by plaintiff at page 20 of his brief, it would seem that at least in part the district court's holding was based upon the absence of probable cause for the arrests:

> "No prior adversary judicial determination or probable cause had preceded any of the arrests, searches, confiscations or prosecutions complained of by the plaintiffs, nor had the provisions of F.S. 847.011(7) been followed."

In *Cambist, supra,* no adversary hearing was had prior to the prosecution of a motion picture distributor pursuant to a Kentucky obscenity statute. The court held that without a showing that the constitutional statute was not being enforced in good faith, prosecution of the distributor could not be enjoined.

To the extent that *Delta, supra,* and the other cases support the proposition that an adversary hearing to determine the issue of obscenity must be held prior to any prosecution under an obscenity statute, I choose not to follow them. This court's decision is controlled by the Seventh Circuit's holding in Metz-

ger v. Pearcy, 393 F.2d 202 (7th Cir. 1968). In *Metzger,* members of the Sheriff's Department, Marion County, Indiana, after viewing the entire public showing of a film and believing it obscene, seized without warrants four prints of the film. No prior adversary hearing to determine the obscenity of the film was held. Four persons were arrested in connection with the showing of the films. The arrests were also without warrants. In an opinion affirming the district court's preliminary injunction directing the defendants to refrain from interfering with the exhibition of the moving picture and ordering the return to plaintiff of the four films, the court stated:

> "Defendants claim that if law enforcement officers are forbidden to hold the seized material until a later determination regarding its obscenity, the laws proscribing obscenity in Indiana become ineffective.
>
> "The decisions of this Court and of the District Court do not prohibit the prosecution under Indiana obscenity statutes. The District Court's injunction ordered that the plaintiff deliver to the defendant's prosecuting attorney, upon request of such defendant, one print of the film 'I, A Woman' for his use in the trials of or in the preparation for the trials of the criminal cases involving such film now pending in the Municipal Court of Marion County, Indiana." 393 F.2d at 204.

Amato further contends that § 944.21(1) (a) is unconstitutional because it does not require scienter.

It is true that a statute construed to eliminate the requirement of scienter is invalid. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959). The United States Supreme Court has held, however, that a state court's interpretation of its obscenity statute to require scienter, forecloses a challenge to the statute based on Smith v. California, *supra.* Mishkin v. New York, 383 U.S. 502, 510–511, 86 S.Ct. 958, 16 L.Ed. 2d 56 (1966).

The Wisconsin Supreme Court in State v. Chobot, 12 Wis.2d 110, 118–119, 106 N.W.2d 286 (1960), cited and quoted at length from Smith v. California for the proposition that to be valid a criminal obscenity statute must require scienter. The Wisconsin court went on to find that a sufficient showing of scienter had been made. Given the fact that the Wisconsin court, knowing it to be clear from *Smith, supra,* that § 944.21 (1) (a) was unconstitutional unless it required the showing of scienter, affirmed the defendant's conviction under the statute, it can only be concluded that § 944.21(1) (a) was construed to require scienter.

Amato argues that if § 944.21(1) (a) requires scienter, it is being unconstitutionally applied since the complaint does not recite facts sufficient to establish probable cause to believe that Amato had knowledge that the material he sold was obscene. I express no opinion concerning the sufficiency of the complaint. In this respect, the case does not differ from any other in which the defendant asserts that a complaint in a state criminal prosecution is defective.

*Prosecutions Under Sections 20.08 and 20.09 of the Ordinances of the City of Janesville*

Plaintiff requests that this court ultimately declare §§ 20.08 and 20.09 of the Ordinances unconstitutional. He presently pursues entry of a temporary order restraining his prosecution under the ordinances until such time as this court determines their constitutionality. Prior to determining whether this is an appropriate case for equitable relief, this court is confronted with two threshold considerations: (1) whether abstention is appropriate; (2) whether federal injunctive relief is barred by the anti-injunction statute, 28 U.S.C. § 2283.

### 1. *Abstention*

In Dombrowski v. Pfister, 380 U. S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965), the Court recognized the underlying assumptions upon which the general policy of federal deference to state tribunals was based: "[S]tate courts and prosecutors will observe constitutional limitations as expounded by this Court * * *" and "the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings", since defense of the State's criminal prosecution will assure adequate vindication of constitutional rights. *Dombrowski, supra,* at 484–485, 85 S.Ct. at 1120. However abstention is inappropriate when "special circumstances" exist such that either the assumption that state courts and prosecutors will observe constitutional limitations or the assumption that defense in a criminal prosecution will assure adequate vindication of constitutional rights is unwarranted.

The "special circumstances" enunciated in *Dombrowski, supra,* are present in the instant case.

In *Dombrowski* the Court stated:

"On this view of the 'vagueness' doctrine, it is readily apparent that abstention serves no legitimate purpose where a statute regulating speech is properly attacked on its face, and where, as here, the conduct charged in the indictments is not within the reach of an acceptable limiting construction readily to be anticipated as the result of a single criminal prosecution and is not the sort of 'hardcore' conduct that would obviously be prohibited under any construction. In these circumstances, to abstain is to subject those affected to the uncertainties and vagaries of criminal prosecution, whereas the reasons for the vagueness doctrine in the area of expression demand no less than freedom from prosecution prior to a construction adequate to save the statute. In such cases, abstention is at war with the purposes of the vagueness doctrine, which demands appropriate federal relief regardless of the prospects for expeditious determination of state criminal prosecutions." 380 U.S. at 491–492, 85 S.Ct. at 1124.

Amato contends that Sections 20.08 and 20.09 are unconstitutionally vague on their face. That claim has merit. Section 20.08 prohibits the giving of an exhibition which is "immoral or indecent." Section 20.09 prohibits one from displaying or keeping for display "obscene or indecent" literature. Unlike § 944.21 (1) (a) of the Wisconsin Statutes, neither §§ 20.08 nor 20.09 enjoys a clarifying construction by the Wisconsin Supreme Court. It is further argued that neither ordinance requires, nor can be reasonably construed to require, scienter. If so, each ordinance would be fatally defective. Smith v. California, 361 U.S. 147, 80 S.Ct. 215, 4 L.Ed.2d 205 (1959).

The absence of a saving judicial construction of either ordinance, coupled with the apparent absence of the scienter requirement, afford Amato's challenge a reasonable chance of ultimate success.

I conclude that abstention could well result in the denial of any effective safeguards against the loss of protected freedoms of expression.

2. *28 U.S.C. § 2283*

28 U.S.C. § 2283 provides:

"A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

The Supreme Court of the United States has expressly reserved the question of whether suits under 42 U.S.C. § 1983 constitute an "expressly authorized" exception to § 2283. The Third Circuit has held that § 1983 constitutes an express authorization. Cooper v. Hutchinson, 184 F.2d 119, 124 (3rd Cir. 1950). The Seventh and Fourth Circuit have held that it does not. Goss v. State of Illinois, 312 F.2d 257, 259 (7th Cir. 1963); Smith v. Village of Lansing, 241 F.2d 856, 859 (7th Cir. 1957); Bains v. City of Danville, 337 F.2d 579 (4th Cir. 1964).

In a dissenting opinion in Zwicker v. Boll, 270 F.Supp. 131 (W.D.Wis.1967),

I concluded that the logic of the doctrines exemplified in Thornhill v. State of Alabama, 310 U.S. 88, 60 S.Ct. 736, 84 L.Ed. 1093 (1940); N.A.A.C.P. v. Button, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); Cox v. State of Louisiana, 379 U.S. 536, 85 S.Ct. 453, 13 L.Ed.2d 471 (1965); and *Dombrowski, supra,* compel the conclusion that in a proper case 42 U.S.C. § 1983 permits a federal court to stay proceedings in a state court, despite 28 U.S.C. § 2283.

Since *Zwicker, supra,* Landry v. Daley, 288 F.Supp. 200 (N.D.Ill.1968) has been decided. The court noted that "[i]nferentially at least, [the Supreme Court's decisions in *Dombrowski, supra,* and Cameron v. Johnson, 390 U.S. 611, 88 S.Ct. 1335, 20 L.Ed.2d 182 (1968)] would appear inconsistent with the earlier Fourth and Seventh Circuit decisions holding section 2283 a bar and consistent with the contrary decision of the Third Circuit." *Landry, supra,* at 225. I believe that *Dombrowski* and *Cameron* permit me to treat the question as an open question in this circuit. Section 2283 "is inapplicable where it is proven that a state statute is unconstitutional as too vague or broad or is being enforced in bad faith for the purpose of discouraging protected activities." *Landry, supra,* at 224.

3. *Equitable relief*

In acknowledging that "considerations of federalism have tempered the exercise of equitable power", in Dombrowski v. Pfister, 380 U.S. 479, 484–485, 85 S.Ct. 1116, 1120, 14 L.Ed.2d 22 (1965), the Court recognized "that the mere possibility of erroneous initial application of constitutional standards will usually not amount to the irreparable injury necessary to justify a disruption of orderly state proceedings." The Court went on, however, to state that equitable relief would be granted to prevent a substantial loss or impairment of freedoms of expression resulting from prosecution under an excessively broad statute regulating expression. In such cases the "assumption that defense of a criminal prosecution will generally assure ample vindi-

cation of constitutional rights is unfounded." 380 U.S. at 486, 85 S.Ct. at 1120. The threat of prosecution has a chilling effect upon sensitive First Amendment rights.

■ The facts of the instant case place it within *Dombrowski.* I conclude that Amato has alleged sufficient irreparable injury to justify equitable relief.

I further conclude that there is a reasonable chance that plaintiff may ultimately prevail in this action with respect to his contention that Sections 20.08 and 20.09 of the Ordinances of the City of Janesville are unconstitutional. The language of the ordinances, without the benefit of construction by the Wisconsin courts, does not appear to satisfy the requirement of Roth v. United States, 354 U.S. 476, 491, 77 S.Ct. 1304, 1312, 1 L.Ed.2d 1498 (1957), that the language convey "sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices." Unlike the situation in *Roth, supra,* it does not appear that the ordinances have been applied according to a proper standard which gives "warning of the conduct proscribed and [marks] boundaries sufficiently distinct for judges and juries fairly to administer the law." 354 U.S. 491, 77 S.Ct. 1313. Further, as earlier stated, there is merit to plaintiff's contention that the ordinances do not require, nor can reasonably be interpreted to require, scienter and therefore must fall.

A temporary order restraining defendants from further prosecuting Amato under the ordinances will be issued.

*Prosecution Under Section 9.07(2) of the Ordinances of the City of Janesville*

■ Plaintiff requests that this court ultimately declare § 9.07(2) of the Ordinances of the City of Janesville to be unconstitutional as applied to him. He presently pursues entrance of (1) a temporary order restraining his prosecution under the ordinance until such time as this court determines its constitutionality and (2) an order requiring the return of all matter seized October 20, 1969, incident to his arrest for violation of § 9.07(2). Defendants Cochran, McDonnell and Bidwell move to dismiss the action as it pertains to the arrest and seizure under § 9.07(2) on October 20, 1969, "because said actions were done legally, correctly and without the violation of any rights of the plaintiff."

Section 9.07(2) is lengthy. A proper construction of it requires analysis of all of its provisions. For the present purpose, it is enough to say that the City's theory is that Amato did "exhibit or give any * * * exhibition" on October 20, 1969, within the meaning of Section 9.07(2), without having obtained the required license therefor. It is alleged that on that date, Amato was charging 50 cents to enter his book store, to be "refunded on purchase."

This is an appropriate case for abstention.

Dombrowski v. Pfister, 380 U.S. 479, 489–490, 85 S.Ct. 1116, 1122, 14 L.Ed. 2d 22 (1965), teaches that the abstention doctrine is inappropriate in cases where statutes are "justifiably attacked on their face as abridging free expression, or as applied for the purpose of discouraging protected activities."

Amato does not contend that § 9.07 (2), on its face, is an overly broad and vague regulation of expression. He does not contend that the ordinance is in need of authoritative constructions to illuminate its contours sufficiently. He does not contend that sufficient articulation of the ordinance requires a series of criminal prosecutions, dealing as they inevitably must with only a narrow portion of the prohibition at any one time. Rather, Amato contends that the ordinance is being applied to activity beyond its scope and that such an application deprives him of First Amendment rights.

The second "wing" of *Dombrowski* holds abstention inappropriate when there is an attack on "the good faith of the [prosecutors] in enforcing the statutes, claiming that they have invoked, and threaten to continue to invoke, crimi-

nal process without any hope of ultimate success, but only to discourage [plaintiff's] civil rights activities." *Dombrowski, supra,* at 490, 85 S.Ct. at 1123. Amato has not made a showing sufficient for this court to conclude that abstention is inappropriate under that "wing" of *Dombrowski*. Amato is being prosecuted under each of three ordinances. It is true that §§ 20.08 and 20.09 may well be held, ultimately in this court, to be too vague and overbroad to support prosecutions. It is true that § 9.07 (2) may well be held to be inapplicable to the activity for which it is invoked here. However, I conclude that on the present record, Amato has not yet sufficiently supported a contention that the ordinance prosecutions, seizures, and statements by the defendants disclose a bad faith attempt to impose continuing harassment in order to discourage constitutionally protected activity.

Although the plaintiff raises serious constitutional issues concerning the threatened application of § 9.07(2), he has not yet presented a case of threatened irreparable injury to federal rights which warrants cutting short the normal adjudication of defenses in the course of state court prosecutions. The motion to dismiss of defendants Cochran, McDonnell and Bidwell with respect to § 9.07(2), will be granted.

Defendants represent that the matter seized from Amato on October 20, 1969, was taken as evidence incident to a valid arrest. The status of that material is now within the disposition of the state court. Since the material is not contraband, it must be assumed that, at the latest, it will be returned to Amato following the completion of his prosecution under § 9.07(2), whether that prosecution be successful or not.

### Modification of Temporary Order

Defendants Cochran, McDonnell and Bidwell have moved that the temporary restraining order of December 15, 1969 be amended. They would have this court permit a seizure if all of the following requirements are met: (1) the seizure is made pursuant to a valid arrest; (2) the seizure extends only to one copy of each item present; (3) the seizure extends to less than one percent of all items present on the premises, unless there are less than two hundred such items and then to a maximum of two items; and (4) the seizure is not of the same material as previously seized, unless a conviction has been obtained in the prior case.

Defendants cite no authority to the effect that a seizure which occurs prior to an adversary determination, but which meets certain other criteria, provides the safeguards necessary to prevent suppression of nonobscene publications protected by the Constitution. Defendants cite, instead, general language in A Quantity of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964); Marcus v. Search Warrant of Property, 367 U.S. 717, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961); and Kingsley Books v. Brown, 354 U.S. 436, 77 S.Ct. 1325, 1 L.Ed.2d 1469 (1957), for the proposition that protection from the prior restraint of First Amendment rights is not absolute.

Although not absolute, it must also be recognized that First Amendment rights enjoy jealous protection. Defendants have not shown as yet that, on balance, the needs of the prosecution require seizure prior to an adversary hearing. The prosecution enjoys the other alternatives of purchase and civil suppression under Section 269.565 of the Wisconsin Statutes. I do not hold that matter previously adjudged obscene in a Section 269.565 proceeding cannot be seized without a prior adversary hearing, nor that a prior adversary hearing is essential to seizure of books from one who has been previously convicted in an obscenity prosecution concerning the same books.

### Order

For the reasons stated, and upon the basis of the entire record herein, the motion to dismiss of defendant Ruth is hereby granted; the motion of defendants Cochran, McDonnell and Bidwell to

**336**

dismiss the action as it concerns the prosecution and seizure under § 9.07(2) of the Ordinances of the City of Janesville is hereby granted; the motion of Cochran, McDonnell and Bidwell to amend the temporary restraining order of December 15, 1969, is hereby denied.

The defendants Cochran, McDonnell, and Bidwell, and their agents, are hereby restrained, until further order of this court, from continuing to prosecute any pending proceeding against the plaintiff under §§ 20.08 and 20.09 of the Ordinances of the City of Janesville, and from initiating any such proceeding against the plaintiff.

In all other respects the motions of the plaintiff are hereby denied.