Estate of Pamanet (Paul, Jr.,) : Black, Guardian *ad litem*, Appellant, v. Pamanet (Paul, Sr.,) and others, Respondents.*

*No. 186. Argued March 6, 1970.—Decided March 31, 1970.*
(Also reported in 175 N. W. 2d 234 and 177 N. W. 2d 105.)

* Motion for rehearing granted, without costs, on June 2, 1970.

For the appellant the cause was submitted on the brief of *John C. Black* of Shawano, guardian *ad litem*.

For the respondents Paul Pamanet, Sr., and Elsie Pamanet the cause was submitted on the brief of *Jack J. Schumacher* of Shawano.

For the respondent Frederic C. Eberlein, administrator, there was a brief by *Eberlein & Eberlein* of Shawano, and oral argument by *Frederic C. Eberlein.*

ROBERT W. HANSEN, J. This appeal asks one question only, involving the application of a particular Wisconsin statute to a set of facts that are undisputed.

*The facts:* On November 21, 1968, at the age of twenty-one, Paul Pamanet, Jr., died intestate. On July 6, 1956, parental rights of his parents as to Paul, Jr., and other children, had been terminated by order of the county court of Shawano county.

*The issue:* Did the court order terminating the parental rights of the parents of Paul, Jr., terminate or cut off their right to inherit the estate left by Paul, Jr.?

*The statute:* Sec. 48.40, Stats., provides: "The court may, upon petition, terminate *all rights of parents* to a minor in either of the following cases:

"(1) With the written consent of the parents to the termination of their parental rights; or
"(2) If it finds that one or more of the following conditions exist: . . ." (Emphasis supplied.)

Here the termination of parental rights under sub. (2) followed a course of parental neglect culminating in the death of one child and the conviction of both parents on charges of child neglect, and their subsequent imprisonment. Sec. 48.43, Stats., provides: "(1) If, after a hearing, the court finds that one or more of the conditions set out in s. 48.40 exist, it may terminate parental rights" listing the placement alternatives to which "guardianship and legal custody" may be transferred.

*The holding:* The statute must be read as it is written. It is clear in meaning, plain in intent, and unequivocal in the language used. It is "all rights of parents" that are terminated, not just some of them. If the legislature had intended to say, all rights except for the right to inherit from the child, it would have said so. It did not, and the parental right to inherit from his or her child is terminated along with the others.

The trial court reached a contrary conclusion, in part relying upon the rejection by the legislature, in its 1963 session, of a bill that would have provided that both parental rights, and rights of the child to inherit, would

end with a court-ordered termination of parental rights.[1] It is established that when a court places a certain construction upon a statute, such construction becomes part of the statute, and subsequent legislative inaction can be deemed to be approval of such construction.[2] Here there has been no prior court interpretation of the phrase, "all rights of parents," in sec. 48.40, Stats. Thus legislative rejection of the proposed amendment added nothing and subtracted nothing from the statute. Legislative inaction can perpetuate; it does not alter or change what has been enacted into law.

Actually, the proposed bill would have added a cutoff of all rights of the child to an existing cutoff of all parental rights in termination cases. As to the rights of parents, the proposed amendment would have changed nothing at all. The statutory provision that all rights of parents are to be terminated might have been clarified by the amendment. It would not have been changed in any respect. Thus, the thrust of the defeated amendment would have been to add to the present statute a reciprocal termination of all rights of the child to the existing termination of all rights of the parent. However, that proposal was not enacted, so the statute, as it is, specifies that it is all rights of the parents that are terminated. We need not discuss, and we do not here deal with, rights of the child.

[1] Sec. 7, Assembly Bill 615, 1963 Session, providing: "An order terminating the parent-child relationship shall divest the parent and the child of all legal rights, privileges, duties and obligations, including rights of inheritance, with respect to each other."

[2] ". . . This court has long been committed to the principle that a construction given to a statute by the court becomes a part thereof, unless the legislature subsequently amends the statute to effect a change." *Sun Prairie v. Public Service Comm.* (1967), 37 Wis. 2d 96, 100, 154 N. W. 2d 360. *See also: Zimmerman v. Wisconsin Electric Power Co.* (1968), 38 Wis. 2d 626, 157 N. W. 2d 648; *Kindy v. Hayes* (1969), 44 Wis. 2d 301, 171 N. W. 2d 324.

Neither is it necessary nor would it be helpful to discuss the legal consequences of adoption proceedings, which do include the termination of parental rights,[3] but also create a new parent-child relationship between the adopting parents and the adopted child.[4] In a majority of cases, parental rights are terminated as part of adoption proceedings under sec. 48.92, Stats. But it is with sec. 48.40, not sec. 48.92, that we are here concerned.

There remains only the belated objection to the 1956 proceeding in which the county court terminated all rights of these parents to their child, Paul, Jr. The time for appeal has long since expired and the challenge must be held to have been waived.

As the guardian *ad litem* for his brothers and sisters contends, Paul, Jr.'s heirs at law are his brothers and sisters, not the parents whose rights as parents were terminated back in 1956. That is the result required by the law, and it certainly is not inconsistent with the equities in this situation.

*By the Court.*—Order reversed.

The following memorandum was filed June 2, 1970.

PER CURIAM. (*on motion for rehearing*). We are asked on rehearing to clarify the last paragraph of the opinion by stating who are the brothers and sisters of Paul Pamanet, Jr. Prior to termination of the parental

---

[3] ". . . The moving party here is not the state but the prospective adoptive parents. They can obtain no rights as to the child except through the surrender by or deprivation of substantially the same rights then existing in the living natural parents. . . ." *Lacher v. Venus* (1922), 177 Wis. 558, 567, 568, 188 N. W. 613.

[4] ". . . We think the intent of sec. 48.92, Stats., from its language is to effect upon adoption a complete substitution of rights, duties, and other legal consequences of the natural relation of child and parent and kin with those same rights, duties, and legal consequences between the adopted person and the adoptive parents and kin." *Estate of Topel* (1966), 32 Wis. 2d 223, 227, 145 N. W. 2d 162.

rights of the parents of Paul Pamanet, Jr., there were four Pamanet children: Paul, Jr. (the deceased), Richard, Angela, and Arlin. Subsequent to the termination of parental rights, Jackie and Dorla (twins) were born, but since they were adopted prior to the death of Paul, Jr., it is conceded they have no rights to inherit from Paul, Jr. Subsequently, the following children were born to Mr. and Mrs. Paul Pamanet, Sr.: Bernadette, Judith, Carol, Philip, Robert, Jane, and Peggy. Parental rights have not been terminated to these seven children.

We hold the termination of parental rights on July 6, 1956, as to Paul, Jr., Richard, Angela, and Arlin, did not affect their brother and sister relationship to those children born thereafter to the Pamanets. The disqualification of the parents to inherit from Paul, Jr., does not disqualify their children born after the termination from inheriting directly from the children born prior to termination.

No oral argument or costs are granted.