PROGRESSIVE NORTHERN INSURANCE COMPANY,
Plaintiff-Respondent,

v.

Richard P. ROMANSHEK,
Defendant-Appellant,

BLUE CROSS BLUE SHIELD UNITED OF WISCONSIN,
Defendant.

Supreme Court

*No. 2004AP740. Oral argument February 4, 2005.
—Decided June 7, 2005.*

2005 WI 67

(Also reported in 697 N.W.2d 417.)

304

305

For the defendant-appellant there was a brief (in the court of appeals) by *Charles H. Bohl, Michael R. Sarner* and *Whyte, Hirschboeck Dudek S.C.,* Milwaukee, and oral argument by *Tamara Hayes O'Brien.*

For the plaintiff-respondent there was a brief (in the court of appeals) by *Robert J. Lauer, Patti J. Kurth,* and *Kasdorf, Lewis & Swietlik, S.C.,* Milwaukee, and oral argument by *Robert J. Lauer.*

An amicus curiae brief was filed by *Michael Riley* and *Axley Brynelson, LLP,* Madison, on behalf of Wisconsin Academy of Trial Lawyers.

An amicus curiae brief was filed by *Noreen J. Parrett, James A. Friedman* and *LaFollette Godfrey & Kahn,* Madison, on behalf of the Wisconsin Insurance Alliance.

¶ 1. JON P. WILCOX, J. This case is before the court on a motion to bypass, pursuant to Wis. Stat.

§ 808.05 (2001–02)[1] and Wis. Stat. § (Rule) 809.60. We are once again called upon to determine whether the phrase "hit-and-run" within the definition of "uninsured motor vehicle" in Wis. Stat. § 632.32(4)(a)2.b. requires an insurer to provide uninsured motorist (UM) coverage when its insured is the victim of a "miss-and-run" accident. We decline to overrule our long line of precedent requiring physical contact in an accident involving an unknown vehicle in order for there to be a "hit-and-run" within the meaning of § 632.32(4)(a)2.b. Therefore, we affirm the order of the circuit court.

I

¶ 2. On May 28, 2003, Progressive Northern Insurance Company (Progressive) filed a complaint for declaratory judgment against its insured, Richard P. Romanshek (Romanshek), seeking a declaration of the rights of the parties under its insurance policy. The following facts were alleged in Progressive's complaint and admitted in Romanshek's answer.

¶ 3. Progressive is a domestic insurance company licensed to do business in Wisconsin. Romanshek is an adult resident of Wisconsin. Romanshek had a Progressive motorcycle liability insurance policy in full force and effect at all relevant times. The policy contained a provision providing UM coverage. On December 28, 2002, Romanshek was driving his Harley-Davidson motorcycle in Naples, Florida, and was involved in a motor vehicle accident.[2] The accident involved an uni-

---

[1] All subsequent references to the Wisconsin Statutes are to the 2001–02 version unless otherwise indicated.

[2] Progressive's policy contained a clause requiring all disputes to be settled according to the law of the state in which the insured resides.

dentified vehicle that turned in front of Romanshek's motorcycle, causing Romanshek to lose control of his machine, fall to the ground, and suffer injuries. Romanshek's motorcycle never came into physical contact with the unidentified vehicle or any part of said vehicle. The unknown vehicle drove away and has never been identified.[3]

¶ 4. Romanshek subsequently made a claim with Progressive under the UM portion of his policy. Progressive denied his claim in a letter dated February 3, 2003, on the ground that the unknown vehicle was not an "uninsured motor vehicle" as defined in the policy. Progressive's policy provides, in pertinent part:

**INSURING AGREEMENT-UNINSURED MOTOR-IST COVERAGE**

. . . .

**ADDITIONAL DEFINITIONS**

. . . .

3. "**Uninsured motor vehicle**" means a land motor vehicle of any type or a trailer while used with a land motor vehicle:

. . . .

 c. that is a hit-and-run vehicle whose operator or **owner** cannot be identified *and which strikes*

 i. **you** or a **relative**;

 ii. a vehicle that **you** or a **relative** are **occupying**; or

---

[3] Progressive apparently does not contest Romanshek's version of events.

308

iii. a **covered vehicle**;

provided that the **insured person**, or someone on his or her behalf, reports the **accident** to the police or civil authority as soon as practicable after the **accident**.

(Underscoring added.) Progressive subsequently commenced the present action, seeking a declaration that no UM coverage is provided under the policy for a miss-and-run accident.

¶ 5. On October 22, 2003, Progressive filed a motion for declaratory/summary judgment, arguing that its policy did not provide UM coverage because the unknown vehicle did not strike Romanshek's motorcycle and thus was not an "uninsured motor vehicle" as defined in its policy. In its brief in opposition to Progressive's motion for summary judgment, Romanshek did not contest that Progressive's policy requires physical contact in order for an unidentified vehicle to qualify as an "uninsured motor vehicle" under the "hit-and-run" definition. Rather, Romanshek argued that by requiring physical contact, Progressive's policy impermissibly attempts to narrow the scope of UM coverage mandated by § 632.32(4)(a)2.b., which, according to Romanshek, should not be read as containing a physical contact requirement. Specifically, Romanshek argued that *Hayne v. Progressive Northern Insurance Co.,* 115 Wis. 2d 68, 339 N.W.2d 588 (1983), which interpreted § 632.32(4)(a)2.b. to require physical contact, "has been eroded to the point that it has no meaning."

¶ 6. At the hearing on the motion, the circuit court noted that "it seems to me it would be appropriate to include [a miss-and-run] in the definition for uninsured motorist coverage at this point in time. But at least right now that's not the definition as it exists in

309

the State of Wisconsin." The court ruled: "The State of Wisconsin clearly requires that there be a physical contact component, if you will, between the vehicle or the injured party and what is the uninsured vehicle . . . . And, quite clearly, that has been the law for the past twenty years."

¶ 7. Thus, on January 28, 2004, the circuit court entered an order for declaratory/summary judgment in favor of Progressive. Romanshek appealed, and this court granted his petition to bypass on October 19, 2004.

## II

¶ 8. The sole question presented on this appeal is whether § 632.32(4)(a)2.b. mandates UM coverage for an accident involving an unidentified motor vehicle and an insured's vehicle when there is no physical contact. In other words, we must determine whether the phrase "hit-and-run" within the definition of "uninsured motor vehicle" in § 632.32(4)(a)2.b. requires an insurer to provide UM coverage when its insured is the victim of a "miss-and-run" accident. Statutory interpretation is an issue of law, reviewed de novo by this court. *State v. Waushara County Bd. of Adjustment*, 2004 WI 56, ¶ 14, 271 Wis. 2d 547, 679 N.W.2d 514. Further:

> In a declaratory judgment action, the granting or denying of relief is a matter within the discretion of the circuit court. This court reviews such decisions to determine whether the circuit court erroneously exercised its discretion. If the circuit court proceeds on an erroneous interpretation of the law, the exercise of discretion is erroneous.

*Theis v. Midwest Sec. Ins. Co.*, 2000 WI 15, ¶ 8, 232 Wis. 2d 749, 606 N.W.2d 162(citations omitted).

¶ 9. The standards for granting summary judgment are well known and need not be set forth in full. *See* Wis. Stat. § 802.08. When the facts are undisputed, the interpretation and application of a statute to these facts present a question of law appropriate for summary judgment. *See Tri-Tech Corp. of Am. v. Americomp Servs., Inc.,* 2002 WI 88, ¶ 19, 254 Wis. 2d 418, 646 N.W.2d 822; *Fore Way Express, Inc. v. Bast,* 178 Wis. 2d 693, 701, 505 N.W.2d 408 (Ct. App. 1993); *Hake v. Zimmerlee,* 178 Wis. 2d 417, 421, 504 N.W.2d 411 (Ct. App. 1993).

### III

¶ 10. Wisconsin Stat. § 632.32(1) provides that every policy of insurance issued in Wisconsin must contain certain provisions. Among these mandatory provisions is Wis. Stat. § 632.32(4), which requires insurance policies to provide UM coverage and medical payments coverage. Wisconsin Stat. § 632.32(4)(a) governs UM coverage and provides that insurance policies must contain a provision:

> 1. For the protection of persons injured who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury, sickness or disease, including death resulting therefrom, in limits of at least $25,000 per person and $50,000 per accident.

> 2. In this paragraph "uninsured motor vehicle" also includes:

> a. An insured motor vehicle if before or after the accident the liability insurer of the motor vehicle is declared insolvent by a court of competent jurisdiction.

b. *An unidentified motor vehicle involved in a hit-and-run accident.*

3. Insurers making payments under the uninsured motorists' coverage shall, to the extent of payment, be subrogated to the rights of their insureds.

(Emphasis added.)

¶ 11. Romanshek argues that Wisconsin courts have eroded the physical contact requirement set forth in *Hayne* and that this court should therefore abandon it. He also argues that requiring physical contact contravenes the intent of UM coverage. Finally, he asserts that a majority of other states have held that requiring physical contact in order for there to be a hit-and-run is against public policy.

¶ 12. In contrast, Progressive argues that case law interpreting § 632.32(4)(a)2.b. has consistently required physical contact in order for UM coverage to be required. It also argues that because the court has consistently interpreted the statute, any change in the statutory requirements must come from the legislature. Moreover, Progressive states that because its policy clearly requires physical contact in order for there to be a hit-and-run, Romanshek could not reasonably expect coverage where there was no physical contact. Progressive states that the parties are bound by their contractual agreement, and the court cannot rewrite the insurance contract to eliminate the physical contact requirement.

¶ 13. We begin by emphasizing that the sole issue on appeal is the proper construction of § 632.32(4)(a)2.b. Therefore, "[t]he question to be decided here . . . is not the construction of the policy, but what the law requires. Thus, the reasonable expecta-

tion of the insured regarding the language of the policy is not relevant to our analysis of Wis. Stat. § 632.32(4)(a)2.b." *Smith v. Gen. Cas. Ins. Co.*, 2000 WI 127, ¶ 27, 239 Wis. 2d 646, 619 N.W.2d 882. "[C]overages omitted from an insurance contract may nevertheless be compelled and enforced as though a part thereof where the inclusion of such coverage is required by a properly enacted statute." *Amidzich v. Charter Oak Fire Ins. Co.*, 44 Wis. 2d 45, 53, 170 N.W.2d 813 (1969).

¶ 14. The first case relevant to our discussion of the meaning of the term "hit-and-run" is *Amidzich*. *Amidzich* was decided prior to the enactment of § 632.32. *See* § 171, ch. 102, Laws of 1979. In *Amidzich,* the insurance policy at issue provided coverage for damages caused by a hit-and-run vehicle, which was defined as an automobile that " 'causes bodily injury to an insured arising out of *physical contact* of such automobile . . . .' " *Amidzich,* 44 Wis. 2d at 48 (emphasis supplied by *Amidzich*).

¶ 15. The insured contended that the phrase "physical contact" should be interpreted so as to provide coverage where a vehicle forces an insured off the road without actually striking the insured's vehicle. *Id.* at 49. The insured also argued that "the only justification for the 'physical contact' requirement is the prevention of fraudulent claims" and that because there was no evidence of fraud, the requirement was inapplicable. *Id.*

¶ 16. The court rejected the insured's argument, ruling:

> We are satisfied that the phrase in the policy, "physical contact," is intended to express no other meaning than that which is plainly apparent on its face. Despite the forceful arguments of the appellants, we conclude that there is no reasonable construction to this phrase that supports other than the requirement

that there be an actual striking between the "hit-and-run automobile" and the insured's vehicle, at least in a situation where only two vehicles are involved. *The very term, "hit-and-run," contained in the policy itself supports the plain meaning that we attribute to the term "physical contact."* The word, "hit," is defined in Webster's Third New International Dictionary as:

"1a: a blow striking an object aimed at—contrasted with *miss . . .* b: an impact of one thing against another: collision . . . ."

*Id.* at 51 (first emphasis added).

¶ 17. In closing, the court noted that "[p]ersuasive arguments could be made that statutory requirements to afford coverage to the plaintiff should be provided. The present statute, however, does not require such coverage, nor does the policy as written provide for it." *Id.* at 54.

¶ 18. Subsequently, the legislature enacted § 632.32, which included in the definition of uninsured motor vehicle, "[a]n unidentified motor vehicle involved in a hit-and-run accident." § 171, ch. 102, Laws of 1979. The Legislative Council Note to this section stated, in pertinent part: "A precise definition of hit-and-run is not necessary for in the rare case where a question arises the court can draw the line." Legislative Council Note, 1979, § 632.32, Stats.

¶ 19. Following the enactment of this new statute, this court decided *Hayne.* "The sole issue on appeal" in *Hayne* was "whether sec. 632.32(4)(a)2.b., Stats., requires uninsured motorist coverage for an accident involving an insured's vehicle and an unidentified motor vehicle when there was no physical contact between the two vehicles." *Hayne,* 115 Wis. 2d at 69. The relevant facts of *Hayne* were almost identical to the

314

facts presented in the present case. *Id.* The precise question in *Hayne* was "whether the term 'hit-and-run' includes 'miss-and-run' or whether it requires an actual physical striking." *Id.* at 73.

¶ 20. We examined a variety of dictionary definitions of "hit-and-run" and concluded "[t]hese definitions clearly indicate that the plain meaning of 'hit-and-run' consists of two elements: a 'hit' or striking, and a 'run', or fleeing from the scene of an accident." *Id.* at 73–74. Thus, we concluded:

> [T]he statutory language of sec. 632.32(4)(a)2.b., Stats., is unambiguous. We therefore arrive at the legislature's intent by according the language its common and accepted meaning. As previously noted, the common and accepted meaning of the term "hit-and-run" includes an element of physical contact. Section 632.32(4)(a)2.b. mandates coverage only for *"hit-and-run"* accidents involving an unidentified motor vehicle. The clear statutory language of sec. 632.32(4)(a)2.b. reflects a legislative intent that the statute apply only to accidents in which there has been physical contact. Because there was no physical contact under the circumstances of this case, sec. 632.32(4)(a)2.b. does not support Hayne's claim for coverage.

*Id.* at 74 (citation omitted).

¶ 21. Further, we reasoned:

> If the legislature had intended its mandated uninsured motorist coverage to apply to any accident involving an unidentified motorist, as Hayne asserts, that result could have been reached merely by deleting the term "hit-and-run" from the language in [the statute], and having that provision read: "an unidentified motor vehicle involved in an accident." The legislature did not, however, omit the term "hit-and-run". Therefore, to define "hit-and-run" in sec. 632.32(4)(a)2.b. to include

the type of accident Hayne was involved in or any other accident involving an unidentified motor vehicle where there is no physical contact would be to render the term "hit-and-run" in the statute mere surplusage. That we cannot do.

*Id.* at 76.

¶ 22. We also rejected Hayne's argument that we should interpret the phrase "hit-and-run" to include a "miss-and-run" because other jurisdictions had reached a similar conclusion:

> We also note that courts in other states have concluded that the term "hit-and-run" in their uninsured motorist statutes does not connote physical contact. This conclusion is based, in part, on other statutes imposing a duty on a driver involved in an accident to stop, provide certain information, and render aid. . . . Wisconsin's version of these statutes, however, is entitled "Duty upon *striking* person or attended or occupied vehicle." Section 346.67, Stats. (Emphasis added.) Section 346.67(1)(a) provides, in part: " . . . he shall give his name, address and the registration number of the vehicle he is driving to the person *struck* . . . ." The reference to "striking" in sec. 346.67 supports our conclusion that the plain meaning of "hit-and-run" in sec. 632.32(4)(a)2.b. includes a physical contact element.

*Id.* at 75 (footnote omitted).

¶ 23. We also rejected Hayne's argument that the legislature intended to overturn the result we reached in *Amidzich* when it enacted § 632.32(4)(a)2.b. *Id.* at 76–79. As noted previously, in *Amidzich,* we specifically stated that the legislature could mandate UM coverage for miss-and-run accidents by statute. *Amidzich,* 44 Wis. 2d at 54. In *Hayne,* we concluded:

316

If, in fact, the legislature had that statement from *Amidzich* in mind when it enacted sec. 632.32(4)(a)2.b., then it also was aware of the discussion in *Amidzich* of the term "hit and run". Had the legislature intended Hayne's assertion, the clearest way to effectuate that intent was simply to not include the term "hit-and-run", thereby mandating coverage for "miss-and-run accidents" as well. The legislature did not do that, but instead deliberately included in sec. 632.32(4)(a)2.b. the term "hit-and-run". The unambiguous meaning of the term includes a physical contact element.

. . . .

The legislature presumably was aware of the discussion in *Amidzich* concerning the literal meaning of "hit-and-run", and certain policy arguments favoring inclusion within the statutory uninsured motorists provision of coverage for "miss-and-run" accidents.

*Hayne,* 115 Wis. 2d at 79, 84.

¶ 24. Furthermore, we concluded that the legislative history of § 632.32(4)(a)2.b. supported the conclusion that the term hit-and-run included a physical contact requirement: "[The] Legislative Council report to the legislature indicate [sic] that those responsible for the revision adding 'hit-and-run' accidents as a category to be included in required uninsured motorist coverage were simply incorporating a category of coverage into the statute that most standard insurance policies already contained." *Id.* at 83. We also stated that miss-and-run accidents were not among the "rare" cases referred to in the Legislative Council Note to § 632.32. *Id.* at 82–83 n.8. In sum, we concluded:

[T]he legislature was confronted with two distinct policy choices: One, it could define uninsured motor vehicle to include an unidentified motor vehicle involved in an accident, regardless of whether physical

contact occurred; or two, it could define uninsured motor vehicle to include an unidentified motor vehicle involved in a "hit-and-run" accident. The legislature chose the second alternative.

*Id.* at 84.

¶ 25. Then Justice Shirley S. Abrahamson dissented from the majority opinion, arguing that several policy arguments supported including miss-and-run accidents within UM coverage for hit-and-run accidents. *Id.* at 85–99. In response, the majority noted:

> Many of the policy arguments favoring uninsured motorist coverage for "miss-and-run" accidents involving unidentified motor vehicles are addressed in the dissent. We cannot, however, change the wording of a statute by liberal construction to mean something that the legislature did not intend, or that the plain language of the statute will not support. *The legislature can, if it so desires, amend the uninsured motorist statute to reflect those policy arguments.*

*Id.* at 85 n.11 (citation omitted) (emphasis added).

¶ 26. Following our decision in *Hayne*, the court of appeals decided *Wegner v. Heritage Mutual Insurance Co.*, 173 Wis. 2d 118, 496 N.W.2d 140 (Ct. App. 1992), and *Dehnel v. State Farm Mutual Automobile Insurance Co.*, 231 Wis. 2d 14, 604 N.W.2d 575 (Ct. App. 1999). The issue in *Wegner* was whether § 632.32(4)(a)2.b. mandated UM coverage in an accident involving three vehicles where the first car swerved into the lane of the second car, causing the second car to swerve into the lane of the insured's car, resulting in the insured's vehicle being forced off the road. *Wegner*, 173 Wis. 2d at 121. The court of appeals, relying on *Hayne*, concluded that "the uninsured motorist insurance laws do not

provide coverage for a hit-and-run driver that does not 'hit' another vehicle[.]" *Id.* at 120.

¶ 27. In *Dehnel,* the insured's vehicle was damaged as a result of a piece of ice that fell off of a passing semitrailer. *Dehnel,* 231 Wis. 2d at 15. The court of appeals held that UM coverage was not mandated by § 632.32(4)(a)2.b. under these facts because a piece of ice falling from an unidentified vehicle was not a hit-and-run accident. *Id.* The court reasoned:

> The type of physical contact which is required under § 632.32(4)(a)2.b. has been described by the supreme court as a "touching between the vehicles." *See Hayne,* 115 Wis. 2d at 78. However, the physical contact that occurred here was not between any part of the semi and Dehnel's vehicle. Rather, it was an indirect touching, in that the ice was not even an integral part of the unidentified vehicle, such as a tire that had become unattached.
>
> We also note that enlarging the statutory interpretation established by the supreme court to cover extraneous objects that may be carried by vehicles would have no reasonable ending point for coverage.

*Id.* at 21–22.

¶ 28. The next occasion this court had to interpret § 632.32(4)(a)2.b. was in *Theis.* In *Theis,* the insured's vehicle was struck by a leaf spring, a part of a semi-tractor, although it was unclear whether the object fell off a passing semi-tractor or came from another vehicle and merely was propelled by the passing semi-tractor. *Theis,* 232 Wis. 2d 749, ¶¶ 4–5.

¶ 29. In analyzing whether § 632.32(4)(a)2.b. mandated coverage for this type of accident, we noted that "[o]ur court and the court of appeals have 'drawn a line' on uninsured motorist claims . . . ." *Id.,* ¶ 19. However, we stated:

> Although the Wisconsin cases have interpreted the hit-and-run provision of Wis. Stat. § 632.32(4) to require physical contact between an insured's motor vehicle and an unidentified motor vehicle, they have not interpreted the statute to negate "physical contact" between the insured's motor vehicle and a part of an unidentified motor vehicle.

*Id.,* ¶ 26. In addition, we distinguished *Dehnel,* noting "[i]n the present case, unlike in *Dehnel,* a piece detached from an unidentified motor vehicle was propelled into the plaintiff's motor vehicle by an unidentified motor vehicle." *Id.,* ¶ 25. Finally, we concluded that mandating coverage for this type of accident would be consistent with the purposes of the UM statute. *Id.,* ¶¶ 28–31. Thus, we concluded: "Wis. Stat. § 632.32(4) requires that the uninsured motorist clauses of an insurance policy provide coverage when a detached piece of an unidentified motor vehicle is propelled into the insured's motor vehicle by an unidentified motor vehicle." *Id.,* ¶ 11.

¶ 30. Finally, in *Smith,* this court was presented with a variation of the facts in *Wegner. Smith* involved a three-car accident that began when an unidentified car in the left lane of the interstate struck a tractor-double trailer in the center lane, which, in turn, struck the insured's vehicle in the right lane. *Smith,* 239 Wis. 2d 646, ¶ 3. The question presented was "whether this chain reaction collision is a 'hit' within the meaning of the statute." *Id.,* ¶ 8.

¶ 31. We began our analysis by noting that "[a] hit-and-run occurs when three elements are satisfied: (1) there is an unidentified motor vehicle; (2) the unidentified vehicle is involved in a hit; and (3) the unidentified motor vehicle 'runs' from the scene of the accident." *Id.,* ¶ 10 (citing *Theis,* 232 Wis. 2d 749,

320

¶¶ 14–16). In addition, we reiterated that "[w]e have previously held that the phrase hit-and-run in Wis. Stat. § 632.32(4)(a)2.b. unambiguously 'includes a physical contact element.' " *Id.*, ¶ 11 (quoting *Hayne,* 115 Wis. 2d at 79). We stated that the issue involved was whether the physical contact requirement was satisfied under the facts presented. *Id.*

¶ 32. Examining the plain language of the statute, we reasoned:

> Wisconsin Stat. § 632.32(4)(a)2.b. defines an uninsured motor vehicle as "an unidentified" vehicle "involved in a hit and run accident." The use of the word "involved" does not strike us as a word that should be narrowly applied only to a hit-and-run accident involving a direct hit to the insured vehicle. Here, the unidentified vehicle was clearly "involved": it precipitated the accident through contact with the intermediate vehicle.

*Id.*, ¶ 12.

¶ 33. Next, we examined our UM jurisprudence and stated that our prior cases fell within two categories: cases involving miss-and-runs and cases involving flying objects. *Id.*, ¶ 14. We stated that both lines of cases involved the physical contact requirement: "While the miss-and-run cases establish the physical contact requirement, the second line of cases presents examples of where the court was required to consider whether that requirement was satisfied." *Id.*, ¶ 22. We distinguished the miss-and-run cases because "in the instant case there was a contact; the unidentified vehicle had contact with the intermediate vehicle, which in turn had contact with the insured vehicle. The miss-and-run cases do not foreclose interpreting Wis. Stat. § 632.32(4) as mandating coverage in this case." *Id.*, ¶ 21.

321

¶ 34. Finally, we examined the policies underlying § 632.32 and concluded that "the public policy concern of preventing fraudulent claims" would be satisfied by mandating coverage in this type of accident and that mandating such coverage would further the policy of providing an injured motorist the same compensation as if the uninsured motorist were insured. *Id.*, ¶ 28. Thus, we concluded that "when an unidentified driver is involved in a chain reaction collision, the physical contact requirement for a 'hit-and-run' is satisfied and coverage is mandated under Wis. Stat. § 632.32(4)(a)2.b." *Id.*

¶ 35. Romanshek's principal argument on this appeal is that we should overrule *Hayne* because our cases subsequent to that decision have eroded the physical contact requirement to the point where it has no meaning. We reject this argument because, as the above discussion demonstrates, both our cases and the court of appeals' decisions have consistently adhered to the interpretation of § 632.32(4)(a)2.b. set forth in *Hayne*, which requires physical contact in accidents involving an unidentified vehicle in order for there to be a hit-and-run under the statute. *Smith*, 239 Wis. 2d 646, ¶ 11 ("We have previously held that the phrase hit-and-run in Wis. Stat. § 632.32(4)(a)2.b. unambiguously 'includes a physical contact element.' ")(quoting *Hayne*, 115 Wis. 2d at 79); *Theis*, 232 Wis. 2d 749, ¶ 26 (accord); *Dehnel*, 231 Wis. 2d at 21 (accord); *Wegner*, 173 Wis. 2d at 121 ("[T]he uninsured motorist insurance laws do not provide coverage for a hit-and-run driver that does not 'hit' another vehicle[.]").

¶ 36. Further, the results in these cases have not undermined the physical contact requirement. The "flying objects" cases, such as *Theis* and *Dehnel*, reaffirmed the physical contact requirement and simply

applied that rule to unusual factual scenarios. *See Smith*, 239 Wis. 2d 646, ¶ 22 ("While the miss-and-run cases establish the physical contact requirement, the [flying objects] cases presents examples of where the court was required to consider whether that requirement was satisfied.").

¶ 37. *Dehnel* found that UM coverage was not mandated when a foreign object, a piece of ice, fell from an unidentified vehicle onto the insured's vehicle. *Dehnel*, 231 Wis. 2d at 21. In contrast, *Theis* found that the physical contact requirement was satisfied because a part of an unidentified vehicle made physical contact with the insured's vehicle. *Theis*, 232 Wis. 2d 749, ¶ 25. Both cases are consistent with the requirement set forth in *Hayne* that physical contact "requires a hit or touching between the vehicles." *Hayne*, 115 Wis. 2d at 78.

¶ 38. Cases subsequent to *Hayne* not involving flying objects have consistently adhered to the physical contact requirement. In *Wegner*, the court of appeals concluded that UM coverage was not mandated because a car that was forced off the road as another swerved into its lane was not involved in a hit-and-run accident due to the fact that there was no physical contact between the vehicles. *Wegner*, 173 Wis. 2d at 120. "[T]he uninsured motorist insurance laws do not provide coverage for a hit-and-run driver that does not 'hit' another vehicle[.]" *Id*. In contrast, *Smith* found UM coverage was mandated in a chain reaction accident because the uninsured vehicle struck another vehicle, which, in turn, struck the insured's vehicle and because § 632.32(4)(a)2.b. explicitly covers vehicles "involved" in a hit-and-run accident. *Smith*, 239 Wis. 2d 646, ¶¶ 12, 28. Thus, *Smith* did not erode the holding of *Hayne*; it merely applied that holding to a new set of facts that

implicated the additional statutory language "involved." As such, both *Wegner* and *Smith* were perfectly consistent with *Hayne,* 115 Wis. 2d at 74, which concluded that "[t]he clear statutory language of sec. 632.32(4)(a)2.b. reflects a legislative intent that the statute apply only to accidents in which there has been physical contact."

¶ 39. Thus, for over 20 years this court has consistently adhered to the plain, unambiguous meaning of § 632.32(4)(a)2.b., as set forth in *Hayne.* We have consistently ruled that UM coverage was not mandated under § 632.32(4)(a)2.b. in miss-and-run accidents. The cases in which we found that UM coverage was mandated by § 632.32(4)(a)2.b. all involved circumstances where an unidentified vehicle, or part thereof, made contact with the insured's vehicle or where an unidentified vehicle was "involved" in an accident in which there was physical contact. In short, as we recognized in *Theis,* 232 Wis. 2d 749, ¶ 19, "[o]ur court and the court of appeals have 'drawn a line' on uninsured motorist claims[,]" by requiring physical contact in order to fall within the mandated UM coverage in § 632.32(4)(a)2.b. We simply have not deviated from that line when it comes to miss-and-run cases.

¶ 40. Romanshek next argues that we should abandon our holding in *Hayne* because a majority of other states (27) have held that physical contact "is an impermissible limitation on uninsured or unknown motorist statutes and is against public policy." Pet'r Br. at 5. In addition, he asserts that requiring physical contact contravenes the intent of UM coverage. We are not persuaded by these arguments for several reasons.

¶ 41. Any time this court is asked to overturn a prior case, we must thoroughly consider the doctrine of stare decisis. "This court follows the doctrine of stare decisis scrupulously because of our abiding respect for the rule of law." *Johnson Controls v. Employers Ins. of Wausau,* 2003 WI 108, ¶ 94, 264 Wis. 2d 60, 665 N.W.2d 257. It is a "longstanding rule that this court 'is bound by its own precedent.' " *State v. Hansen,* 2001 WI 53, ¶ 52, 243 Wis. 2d 328, 627 N.W.2d 195 (Wilcox, J., dissenting)(quoting *Rose Manor Realty Co. v. City of Milwaukee,* 272 Wis. 339, 346, 75 N.W.2d 274 (1956)).

¶ 42. "Fidelity to precedent ensures that existing law will not be abandoned lightly. When existing law 'is open to revision in every case, "deciding cases becomes a mere exercise of judicial will, with arbitrary and unpredictable results." ' " *Schultz v. Natwick,* 2002 WI 125, ¶ 37, 257 Wis. 2d 19, 653 N.W.2d 266 (footnotes omitted). Failing to abide by stare decisis raises serious concerns as to whether the court is "implementing 'principles . . . founded in the law rather than in the proclivities of individuals.' " *Payne v. Tennessee,* 501 U.S. 808, 853 (1991)(Marshall, J., dissenting)(quoting *Vasquez v. Hillery,* 474 U.S. 254, 265 (1986)).

¶ 43. "[F]requent and careless departure from prior case precedent undermines confidence in the reliability of court decisions." *Johnson Controls,* 264 Wis. 2d 60, ¶ 95. " 'Stare decisis is the preferred course of judicial action because it promotes evenhanded, predictable, and consistent development of legal prin-ciples . . . and contributes to the actual and perceived integrity of the judicial process.' " *Id.,* ¶ 95 (quoting *State v. Ferron,* 219 Wis. 2d 481, 504, 579 N.W.2d 654 (1998)(quoting *Payne,* 501 U.S. at 827)). Thus, " 'the

doctrine of *stare decisis* is of fundamental importance to the rule of law.' " *Hilton v. S.C. Pub. Rys. Comm'n,* 502 U.S. 197, 202 (1991)(quoting *Welch v. Tex. Dept. of Highways and Pub. Transp.,* 483 U.S. 468, 494 (1987)).

¶ 44. Additionally,

> [O]ne of the fundamental justifications for the rule of stare decisis is to provide a consistent predictable rule of law upon which society . . . may properly order [its] affairs, i.e., engage in rational business decision-making, without the continuous[,] ominous threat of the legal bases for those decisions being changed.

*Johnson Controls,* 264 Wis. 2d 60, ¶ 149 (Wilcox, J., dissenting). Thus, stare decisis is particularly controlling where the legal rule impacts contractual relationships, *Antoniewicz v. Reszcynski,* 70 Wis. 2d 836, 869, 236 N.W.2d 1 (1975), and has been relied upon by industry, *Quill Corp. v. North Dakota,* 504 U.S. 298, 317 (1992). As such, proper respect for the doctrine of stare decisis means that this court will rarely overturn prior decisions and only when certain criteria are met. *Johnson Controls,* 264 Wis. 2d 60, ¶¶ 98–99. "The decision to overturn a prior case must not be undertaken merely because the composition of the court has changed." *Id.,* ¶ 95 (citing *State v. Stevens,* 181 Wis. 2d 410, 442, 511 N.W.2d 591 (1994)(Abrahamson, J. concurring)).

¶ 45. Moreover, stare decisis concerns are paramount where a court has authoritatively interpreted a statute because the legislature remains free to alter its construction. *Hilton,* 502 U.S. at 202. When a party asks this court to overturn a prior interpretation of a statute, it is his "burden . . . to show not only that [the

decision] was mistaken but also that it was objectively wrong, so that the court has a compelling reason to overrule it." *Wenke v. Gehl Co.,* 2004 WI 103, ¶ 21, 274 Wis. 2d 220, 682 N.W.2d 405.

¶ 46. Thus, the function of this court today is not to interpret § 632.32(4)(a)2.b. de novo. It is not a sufficient basis to overrule *Hayne* that this court disagrees with its rationale. *Johnson Controls,* 264 Wis. 2d 60, ¶ 93. Rather, we must determine whether Romanshek has met his burden and provided sufficient justification to overturn 20 years of jurisprudence construing a statute. We conclude he has not done so.

¶ 47. Our interpretation of § 632.32(4) in *Hayne* clearly involves contracts and implicates reliance interests. Section 632.32(4) governs insurance contracts and mandates that insurance policies provide certain types of coverage. This court has consistently ruled that UM coverage is not mandated under § 632.32(4)(a)2.b. where there is no physical contact. Insurers, like Progressive, have no doubt relied on these cases and retained a physical contact requirement in their UM policy provisions. "It is more than likely that some of the companies utilizing such [a clause] have established premium rates in reliance upon the validity of such a clause being upheld by the decisions of this court." *Bauman v. Gilbertson,* 7 Wis. 2d 467, 469, 96 N.W.2d 854 (1959). Moreover, the reliance interests of other parties aside, Progressive was the very insurer whose policy was implicated in *Hayne.*

¶ 48. Romanshek's reliance on foreign jurisprudence is also not a sufficient reason to depart from our ruling in *Hayne.* "It is not a sufficient reason for this court to overrule its precedent that a large majority of

other jurisdictions, with no binding authority on this court, have reached opposing conclusions." *Johnson Controls,* 264 Wis. 2d 60, ¶ 100. As noted, the physical contact requirement derives from the plain meaning of the phrase "hit-and-run" in § 632.32(4)(a)2.b. as found in *Hayne*. Romanshek merely cites to broad statements from foreign cases concerning the purpose of UM statutes generally; he has not offered any textually-based arguments not considered in *Hayne* that undercut the rationale of that decision. The fact that some states have reached a different conclusion involving their statutes is not germane to the legitimacy of our interpretation of Wisconsin's UM statute.

¶ 49. In addition, *Hayne* itself was cognizant that other states had rejected a physical contact requirement for UM coverage in hit-and-run accidents. As discussed *supra, Hayne* noted that these states have statutes requiring motorists to stop and render aid when involved in an accident and that courts in these states have construed these statutes to apply to all accidents, not simply those involving physical contact. *Hayne,* 115 Wis. 2d at 75. In declining to follow these jurisdictions, *Hayne* reasoned: "Wisconsin's version of these statutes, however, is entitled 'Duty upon *striking* person or attended or occupied vehicle.' Section 346.67 Stats. . . . The reference to 'striking' in sec. 346.67 supports our conclusion that the plain meaning of 'hit-and-run' in sec. 632.32(4)(a)2.b. includes a physical contact element." *Id.*[4]

---

[4] *Hayne* also noted that "[s]ection 346.67(1)(a) provides, in part: '. . . he shall give his name, address and the registration number of the vehicle he is driving to the person *struck* . . . '." *Hayne v. Progressive N. Ins. Co.,* 115 Wis. 2d 68, 75, 339 N.W.2d 588 (1983).

¶ 50. Further, many of the general policy statements from the cases upon which Romanshek relies were articulated in the dissent in *Hayne* and rejected by the majority. *Compare id.* at 95 ("[I]t is inconsistent with the remedial purpose of the uninsured motorist statute to permit the insurance company to evade coverage by using the fraud argument and erecting an arbitrary distinction between accidents with physical contact and those without.") (Abrahamson, J., dissenting) *with id.* at 85 n.11 (rejecting these policy arguments). Moreover, even if this court were now persuaded by those policy arguments rejected in *Hayne,* that is not a sufficient reason to overturn the decision.

¶ 51. Romanshek has not demonstrated that our interpretation of § 632.32(4)(a)2.b. in *Hayne* has failed "to provide suitable direction and consistency to this area of the law." *Johnson Controls,* 263 Wis. 2d 60, ¶ 106. All he has presented is a string of foreign cases and generalized statements about the underlying purposes of statutes that mandate UM coverage. He has not presented any new facts that undermine *Hayne's* analysis of § 632.32(4)(a)2.b. *See id.,* ¶ 98. As discussed *supra,* Romanshek has not demonstrated that our cases subsequent to *Hayne* have undermined the rationale behind that decision, which rationale was based on the plain language of § 632.32(4)(a)2.b. *See id.* He has not shown that our interpretation of § 632.32(4)(a)2.b. in *Hayne* is unworkable in practice. *See id.,* ¶ 99. As noted, our courts have regularly applied the physical contact requirement to miss-and-run accidents and other types of cases in a consistent manner. In short, Romanshek has not presented us with a compelling reason to overrule *Hayne's* application of the plain language of § 632.32(4)(a)2.b. Romanshek simply dis-

agrees with our interpretation of § 632.32(4)(a)2.b. in *Hayne.*

¶ 52. Furthermore, unlike *Johnson Controls,* Romanshek does not simply ask us to reconsider a recent interpretation of a contractual provision. He does not merely ask us to abandon a common-law doctrine; rather, he asks us to change our interpretation of a particular phrase in a statute that has stood for over 20 years. "This court has long been committed to the principle that a construction given to a statute by the court becomes a part thereof, unless the legislature subsequently amends the statute to effect a change." *City of Sun Prairie v. PSC,* 37 Wis. 2d 96, 100, 154 N.W.2d 360 (1967).[5] "Legislative inaction following judicial construction of a statute, while not conclusive, evinces legislative approval of the interpretation." *State v. Eichman,* 155 Wis. 2d 552, 566, 455 N.W.2d 143 (1990). Thus, generally, "[l]egislative silence with regard to new court-made decisions indicates legislative acquiescence in those decisions." *State v. Olson,* 175 Wis. 2d 628, 641, 498 N.W.2d 661 (1993). *See also Bauman,* 7 Wis. 2d at 469–70 (holding that it was not proper to depart from stare decisis where court had previously ruled that policy exclusion did not violate omnibus insurance coverage statute and legislature had not amended statute in the 11 years since the prior decision).

¶ 53. Romanshek contends that this doctrine is not applicable because, according to a Legislative Coun-

---

[5] *See also State v. Rosenburg,* 208 Wis. 2d 191, 198, 560 N.W.2d 266 (1997) ("The court's construction of a statute will stand unless the legislature specifically changes the particular holding."); *State ex rel. LaFollette v. Brown County Cir. Ct.,* 37 Wis. 2d 329, 341, 155 N.W.2d 141 (1967)(accord).

330

cil Note, the legislature explicitly left it up to the court to construe § 632.32(4)(a)2.b. We disagree. The Legislative Council Note to which he refers provides, in pertinent part: "A precise definition of hit-and-run is not necessary for in the rare case where a question arises the court can draw the line." Legislative Council Note, 1979, § 632.32, Stats.

¶ 54. However, this case is not one of the "rare" cases to which the Note refers. Unlike our flying objects cases or the chain-reaction collision in *Smith*, this is a run-of-the-mill miss-and-run case. Unlike the aforementioned difficult cases where reasonable arguments can be made as to whether there may have been a "hit" involving an unidentified vehicle, a *miss*-and-run case clearly falls within the core of what is obviously not a *hit*-and-run. Indeed, we rejected the argument that miss-and-run cases are of the type to which the Note refers in *Hayne:*

> The dissent argues ... that "miss-and-run" cases are the kind of "rare" cases referred to in the above note. Given the voluminous number of reported cases involving "miss-and-run" accidents cited by the dissent, it is difficult to see how "miss-and-run" cases can be considered rare.

*Hayne,* 115 Wis. 2d at 82 n.8.

¶ 55. Thus, it is incorrect to say that the legislature wholly delegated to the courts the power to construe § 632.32(4)(a)2.b. in any manner they saw fit. While the aforementioned Note clearly indicates that the legislature left it up to the courts to decide the difficult "rare" cases involving the application of the phrase "hit-and-run," the existence of said Note does not provide the courts with carte blanche to completely rewrite the phrase "hit-and-run" to include that which is its very antithesis.

331

¶ 56. Therefore, we conclude that the doctrine of legislative acquiescence is applicable here. While the doctrine is not an immutable rule, it is particularly relevant here because both the majority opinion and the dissent in *Hayne* invited the legislature to amend § 632.32(4)(a)2.b. if it disagreed with our interpretation of the statute. *See Hayne,* 115 Wis. 2d at 85 n.11 ("The legislature can, if it so desires, amend the [UM] statute to reflect [the dissent's] policy arguments."); *Id.* at 99 ("Fortunately the Wisconsin legislature can amend sec. 632.32(4)(a) and disavow the interpretation set forth in the majority opinion.")(Abrahamson, J., dissenting). Moreover, the majority even instructed the legislature how to alter the statute to mandate coverage for miss-and-run accidents:

> If the legislature had intended its mandated uninsured motorist coverage to apply to any accident involving an unidentified motorist . . . that result could have been reached merely by deleting the term "hit-and-run" from the language in sec. 632.32(4)(a)2.b., Stats., and having that provision read: an unidentified motor vehicle involved in an accident."

*Id.* at 76.

¶ 57. Although the legislature has amended another provision of the mandatory UM law since *Hayne,* 1995 Wis. Act 21, § 2 (amending § 632.32(4)(a)1.), it has not seen fit to make any change to § 632.32(4)(a)2.b. and overturn this court's interpretation of the phrase "hit-and-run." The fact that the legislature made changes to the same statutory subdivision at issue here, but chose not to amend the phrase "hit-and-run" is a strong indication it intended our interpretation of that phrase in *Hayne* to remain law.

¶ 58. As the doctrine of legislative acquiescence is particularly applicable here, Romanshek must demonstrate that our holding in *Hayne* was objectively wrong, not merely mistaken. *Wenke*, 274 Wis. 2d 220, ¶ 21. This he has not done. While Romanshek argues at length about the supposed policies underlying mandatory UM coverage, he has not presented a compelling textual argument that indicates our interpretation of the phrase "hit-and-run" in *Hayne* was objectively wrong.

¶ 59. Furthermore, we reject Romanshek's argument that requiring physical contact to meet the definition of hit-and-run contravenes the intent of § 632.32. The ruling of *Hayne* was based on the clear, unambiguous statutory language contained in § 632.32(4)(a)2.b. *Hayne*, 115 Wis. 2d at 74–76. "The clear statutory language of sec. 632.2(4)(a)2.b. reflects a legislative intent that the statute apply only to accidents in which there has been physical contact." *Id.* at 74. This court "assume[s] that the legislature's intent is expressed in the statutory language. . . . It is the enacted law, not the unenacted intent, that is binding on the public." *State ex rel. Kalal v. Dane County Cir. Ct.*, 2004 WI 58, ¶ 44, 271 Wis. 2d 633, 681 N.W.2d 110. As the physical contact requirement derives from the plain meaning of the term "hit-and-run" in § 632.32(4)(a)2.b., it cannot contravene the legislative intent; it *is* the legislative intent.

¶ 60. Likewise, we reject Romanshek's suggestion that the physical contact requirement may contravene public policy. "Public policy on a given subject is determined either by the constitution itself or by statutes passed within constitutional limitations. . . . When act-

ing within constitutional limitations, the legislature settles and declares the public policy of a state, and not the court." *Borgnis v. Falk Co.,* 147 Wis. 327, 351, 133 N.W. 209 (1911).[6] Thus, when the legislature has acted, "the judiciary is limited to applying the policy the legislature has chosen to enact, and may not impose its own policy choices." *Fandrey v. Am. Family Mut. Ins. Co.*, 2004 WI 62, ¶ 16, 272 Wis. 2d 46, 680 N.W.2d 345.[7] Therefore, as *Hayne* concluded that the physical contact requirement is part of the UM statute, it cannot contravene public policy; it is public policy.

■■

¶ 61. Romanshek's final argument is that we should refuse to follow *Hayne* because Progressive, he asserts, has conceded that he is not attempting to perpetrate a fraud. Romanshek argues that the sole reason for the physical contact requirement is to avoid fraudulent claims and the rule should not apply here because Progressive does not contend his claim is fraudulent. We reject this argument because "no change in the law is justified simply by a 'case with more egregious facts.' " *Schultz,* 257 Wis. 2d 19, ¶ 38 (quoting *Stevens,* 181 Wis. 2d at 442 (Abrahamson, J., concurring)). In addition, counsel for Romanshek admitted during oral argument that many of our prior hit-and-run cases involved factual allegations whose veracity was not contested on appeal.

---

[6] *See also Flynn v. DOA,* 216 Wis. 2d 521, 539, 576 N.W.2d 245 (1998) ("This court has long held that it is the province of the legislature, not the courts, to determine public policy.").

[7] *See also Wood v. City of Madison,* 2003 WI 24, ¶ 38, 260 Wis. 2d 71, 659 N.W.2d 31 ("The Woods and the amici argue that such a conclusion is bad policy. The remedy for change of this policy, however, lies with the legislature. The courts should not rewrite the clear language of the statute.").

¶ 62. Further, the fact that insurance policies may contain provisions excluding UM coverage when there is no physical contact in order to avoid fraudulent claims is no justification for altering our interpretation of § 632.32(4)(a)2.b. when fraud is not present.[8] *Hayne* set forth the physical contact requirement for mandatory UM coverage under § 632.32(4)(a)2.b. because that is what the plain meaning of the text dictated, not because the court sought to prevent fraud or because it believed such a requirement was "good policy" generally. *Hayne,* 115 Wis. 2d at 84–85.

¶ 63. While this court may mold and develop common-law doctrines to best effectuate the purpose for which they were designed, when applying statutes we do not carve out exceptions to a clear, unambiguous provision anytime a party argues that a particular result does not comport with what they assert to be the subjective intentions of the legislators in enacting the overall statutory scheme. *See Columbus Park Hous. Corp. v. City of Kenosha,* 2003 WI 143, ¶¶ 33–34, 267 Wis. 2d 59, 671 N.W.2d 633 (refusing to carve out an exception to a tax exemption statute governing charitable organizations for a benevolent organization that did not meet the statutory requirements despite its undisputed charitable purpose and activities). Having authoritatively determined the plain meaning of the statute in *Hayne,* we must simply apply that plain

---

[8] We also note that *Amidzich v. Charter Oak Fire Ins. Co.,* 44 Wis. 2d 45, 49–51, 170 N.W.2d 813 (1969), rejected the argument that the plain language of a hit-and-run policy provision should not govern simply because the insured contended that there was no evidence of fraud.

meaning and may not impose our own policy choices. *Id.*

¶ 64. Unlike *Theis* and *Smith,* which involved the application of the phrase hit-and-run to difficult facts and required consideration of the "purposes" of § 632.32,[9] this case involves the very essence of the plain meaning of "hit-and-run." "We cannot, however, change the wording of a statute by liberal construction to mean something that the legislature did not intend, or that the plain language of the statute will not support." *Hayne,* 115 Wis. 2d at 85 n.11.

¶ 65. As we stated in *Hayne,* the legislature is free to change our interpretation of § 632.32(4)(a)2.b. if it deems our interpretation to be incorrect. It may very well be good public policy to mandate UM coverage for an insured injured in a miss-and-run accident. However, Romanshek's policy arguments are best addressed to the body charged with developing this state's public policy.

IV

¶ 66. In conclusion, we decline to overrule our long line of precedent requiring physical contact in an accident involving an unknown vehicle in order for

---

[9] Moreover, we note that the "purposes" of the UM statute to which Romanshek refers are not textually manifest in the statute itself. *See State ex rel. Kalal v. Dane County Cir. Ct.,* 2004 WI 58, ¶ 49 & n.8, 271 Wis. 2d 633, 681 N.W.2d 110. Rather, these "purposes" were first constructed by the dissent in *Hayne,* which relied on statements from other courts and commentators addressing the rationale underlying UM statutes generally. *Hayne,* 115 Wis. 2d at 93–94 (Abrahamson, J., dissenting).

there to be a "hit-and-run" within the meaning of § 632.32(4)(a)2.b. Our cases have consistently affirmed the physical contact requirement and held that miss-and-runs do not qualify as hit-and-runs. Romanshek has offered no᠎ compelling reason to depart from *Hayne's* interpretation of the plain language of § 632.32(4)(a)2.b. He has not demonstrated that *Hayne's* interpretation of the statute was objectively wrong. As such, we refuse to depart from the doctrine of stare decisis, particularly since the ruling in *Hayne* concerns contractual provisions and implicates reliance interests. Further, the fact that the legislature has not amended § 632.32(4)(a)2.b. in the 20 years since *Hayne,* despite our invitation to do so and its amendment of § 632.32(4)(a)1., is strong reason to adhere to stare decisis. Therefore, we reaffirm that the phrase "hit-and-run" in § 632.32(4)(a)2.b. requires physical contact in an accident involving an unidentified vehicle and does not apply to miss-and-run accidents. As such, we affirm the order of the circuit court.

*By the Court.*—The order of the circuit court is affirmed.

¶ 67. SHIRLEY S. ABRAHAMSON, C.J. (*dissenting*). I have carefully read the lengthy majority opinion in the instant case and have reread the majority and dissenting opinions in *Hayne v. Progressive Northern Insurance Co.,* 115 Wis. 2d 68, 339 N.W.2d 588 (1983). I continue to believe that my dissent in *Hayne* is correct. Indeed in the intervening years I have become more persuaded of its correctness.

¶ 68. Many states have either adopted or reaffirmed the position set forth in the *Hayne* dissent.

¶ 69. The *Hayne* majority opinion has been eroded since *Hayne* was decided. This erosion has taken

place because the *Hayne* majority opinion is not in keeping with the objectives of the statute. In an effort to conform with the statutory objectives, this court has pinned the outcome of uninsured motorist cases in Wisconsin on such artificial distinctions as whether a plaintiff can show that physical contact with a third vehicle was indirect,[1] or that a flying object from one vehicle touches the other.[2]

¶ 70. That the legislature has not amended the statute does not dissuade me. "Legislative acquiescence is a familiar argument in statutory construction cases. . . . [But it] is often vulnerable to rebuttal. . . . Numerous variables, unrelated to conscious endorsement of a statutory interpretation, may explain or cause legislative inaction. . . . The doctrine of legislative acquiescence is merely a presumption to aid in statutory construction."[3]

¶ 71. For the reasons explained fully in my *Hayne* dissent and because our subsequent cases have backed away from the *Hayne* majority opinion, I dissent.

---

[1] *Smith v. Gen. Cas. Ins. Co.,* 2000 WI 127, 239 Wis. 2d 646, 619 N.W.2d 882.

[2] *Theis v. Midwest Sec. Ins. Co.,* 2000 WI 15, 232 Wis. 2d 749, 606 N.W.2d 162.

[3] *Wenke v. Gehl Co.,* 2004 WI 103, ¶¶ 32, 33, 35, 274 Wis. 2d 220, 682 N.W.2d 405. *See also State v. Hansen,* 2001 WI 53, ¶ 38, 243 Wis. 2d 328, 627 N.W.2d 195.